[No. 2489]

THE STATE OF NEVADA, EX REL. GEORGE C. HUNTING, PETITIONER, *v.* GEORGE BRODIGAN, AS SECRETARY OF STATE OF THE STATE OF NEVADA, RESPONDENT.

[194 Pac. 845]

1. CONSTITUTIONAL LAW — INTERPRETATION SOUGHT WHICH WILL AVOID ABSURDITY.
   Such an interpretation of the constitution must be sought as will avoid absurd consequences and as will be least likely to produce mischief.

2. STATUTES—PETITIONS TO INITIATE LEGISLATION MUST BE SIGNED BY TEN PER CENT OF WHOLE NUMBER OF VOTES CAST.
   A petition to initiate legislation under Const. art. 19, must be signed by qualified electors who in number equal ten per cent of the whole number of votes cast for justice of the supreme court.

PROCEEDING in mandamus by the State, on the relation of George C. Hunting, to compel George Brodigan, as Secretary of State, to file a petition whereby it is sought to initiate legislation. **Petition denied.**

*Brown & Belford,* for Petitioner.

*L. B. Fowler,* Attorney-General, and *Robert Richards,* Deputy Attorney-General, for Respondent.

*Geo. B. Thatcher* and *Wm. Woodburn, Amici Curiæ:*

The question to be determined is: How many of the qualified voters did the framers of the constitution intend should be required to propose a measure by initiative petition? Const. art. 19, sec. 3. By every rule of constitutional and statutory construction, the proper construction to be put upon the section is that, before any measure can be initiated under it, a petition therefor must be signed by at least ten per centum of the qualified electors. Any other construction would ignore the following significant language in the section: "The whole number of votes cast for justice of the supreme court at the general election last preceding the filing of any initiative petition shall be the basis on which the number

of qualified electors required to sign such petition shall be counted."

Petitioner contends that any number less than ten per centum is sufficient. Such a construction would be offensive to the rule that "effect is to be given, if possible, to every word, clause, and sentence. It is the duty of the court, so far as practicable, to reconcile the different provisions, so as to make them consistent and harmonious, and to give a sensible and intelligent effect to each." 36 Cyc. 1129. To hold that one person can initiate a measure, would result in making the provision unreasonable, and would lead to the most absurd consequences; and such a construction must be avoided unless the constitution and the law imperatively require it. People v. De Quelle, 50 Pac. 112. Such a construction would likewise work a public mischief, and be fraught with many evil consequences. "A constitutional provision, like a statute, should not be so·construed as to work a public mischief, unless the language used is of such explicit and unequivocal import as to leave no other course open to the court, and, when the intention of the lawmakers is ascertained, that must prevail over the letter of the law." Spratt v. Helena P. T. Co., 94 Pac. 636.

*Per Curiam:*

This is an original proceeding in mandamus to compel the secretary of state to file a petition whereby it is sought to initiate certain legislation, pursuant to article 19 of our state constitution, which reads:

"SECTION 1. Whenever ten per centum or more of the voters of this state, as shown by the number of votes cast at the last preceding general election, shall express their wish that any law or resolution made by the legislature be submitted to a vote of the people, the officers charged with the duty of announcing and proclaiming elections, and of certifying nominations, or questions to be voted on, shall submit the question of the approval

or disapproval of said law or resolution to be voted on at the next ensuing election wherein a state or congressional officer is to be voted for, or wherein any question may be voted on by the electors of the entire state.

"SEC. 2.   When a majority of the electors voting at a state election shall by their votes signify approval of a law or resolution, such law or resolution shall stand as the law of the state, and shall not be overruled, annulled, set aside, suspended, or in any way made inoperative except by the direct vote of the people.   When such majority shall so signify disapproval, the law or resolution so disapproved shall be void and of no effect.

"SEC. 3.   The people reserve to themselves the power to propose laws and the power to propose amendments to the constitution and to enact or reject the same at the polls, independent of the legislature, and also reserve the power at their option to approve or reject at the polls, in the manner herein provided, any act, item, section, or part of any act or measure passed by the legislature, and section one of article four of the constitution shall hereafter be construed accordingly.   The first power reserved by the people is the initiative, and not more than ten per cent (10%) of the qualified electors shall be required to propose any measure by initiative petition, and every such petition shall include the full text of the measure so proposed.   Initiative petitions, for all but municipal legislation, shall be filed with the secretary of state not less than thirty (30) days before any regular session of the legislature; the secretary of state shall transmit the same to the legislature as soon as it convenes and organizes.   Such initiative measure shall take precedence over all measures of the legislature except appropriation bills, and shall be enacted or rejected by the legislature, without change or amendment, within forty (40) days.   If any such initiative measure, so proposed by petition as aforesaid, shall be enacted by the legislature and approved by the governor in the same manner as other laws are enacted, same shall become a law, but shall be subject to referendum petition as

provided in sections one and two of this article. If said. initiative measure be rejected by the legislature or if no action be taken thereon within said forty (40) days, the secretary of state shall submit the same to the qualified electors for approval or rejection at the next ensuing general election; and if a majority of the qualified electors voting thereon shall approve of such measure it shall become a law and take effect from the date of the official declaration of the vote; an initiative measure so approved by the qualified electors shall not be annulled, set aside, or repealed within three (3) years from the date said act takes effect. In case the legislature shall reject such initiative measure, said body may, with the approval of the governor, propose a different. measure on the same subject, in which event both measures shall be submitted by the secretary of state to the qualified electors for approval or rejection at the next ensuing general election. The enacting clause of all bills proposed by the initiative shall be: 'The People of the State of Nevada do enact as follows.' The whole number of votes cast for justice of the supreme court at the general election last preceding the filing of any initiative petition shall be the basis on which the number of qualified electors required to sign such petition shall be counted. The second power reserved by the people is the referendum, which shall be exercised in the manner provided in sections one and two of this article. The initiative and referendum powers in this article provided for are further reserved to the qualified electors of each county and municipality as to all local, special and municipal legislation of every character in or for said respective counties or municipalities. The legislature may provide by law for the manner of exercising the initiative and referendum powers as to county and municipal legislation, but shall not require a petition of more than ten per cent (10%) of the qualified electors to order the referendum, nor more than fifteen per cent (15%) to propose any municipal measure by initiative. If the conflicting measures submitted to the people at the next ensuing

general election shall both be approved by a majority of the votes severally cast for and against each of said measures, the measure receiving the highest number of affirmative votes shall thereupon become a law as to all conflicting provisions. The provisions of this section shall be self-executing, but legislation may be specially enacted to facilitate its operation."

The secretary of state refuses to file the petition, upon the ground that it is not signed by qualified electors who in number equal ten per centum of the whole number of votes cast for justice of the supreme court at the general election last preceding.

·The sole question presented for our consideration is whether or not, under the article of the constitution quoted, the position of the secretary of state is good in law; it being admitted that the petition is not signed by the ten per centum of the qualified electors.

The point made by counsel for petitioner is that the article in question does not state definitely what per centum of the qualified electors shall be required to a petition such as the one in question, and hence a petition signed by any number entitles the same to be filed. The only clause of the article which alludes to the question of percentage reads:

"The first power reserved by the people is the initiative, and not more than ten per cent (10%) of the qualified electors shall be required to propose any measure by initiative petition. * * * "

On the other hand, it is said that, since every word must be considered and given its full meaning, no such interpretation can be placed upon the article, in view of the following language in section 3, viz:

"The whole number of votes cast for justice of the supreme court at the general election last preceding the filing of any initiative petition shall be the basis on which the number of qualified electors required to sign such petition shall be counted."

As to this contention, it is said that it was merely intended by the clause in question to fix a basis upon

which the percentage should be ascertained, in case the legislature should pass an act requiring a certain per centum of the votes cast as necessary to entitle a petition to be filed. This contention carries with it the implication that the legislature may designate a certain percentage of the vote for justice of the supreme court as sufficient to entitle such a petition to be filed. We do not deem it necessary to pass upon this question.

1. Of course, the real question presented is the ascertaining of the intention, and in so doing it is agreed between counsel that we must consider the entire article; and such is evidently the correct rule in the instant case. We may say that the question involved is not entirely free from doubt, but in reaching a conclusion we must be guided by certain cardinal rules of interpretation, among which are that such an interpretation must be sought as will avoid absurd consequences (Escalle v. Mark, 43 Nev. 172, 183 Pac. 387, 5 A. L. R. 1512), and as will be least likely to produce mischief (Arnold v. Stevenson, 2 Nev. 234–242; Haydon v. Board, 2 Nev. 371; O'Neil v. Mining Co., 3 Nev. 141; Spratt v. Helena P. T. Co., 37 Mont. 60, 94 Pac. 631).

Should we give to the article the interpretation sought by the petitioner, it might result not only in absurd, but in disastrous, consequences, for it is conceded by counsel for petitioner that if their contention is sustained such an initiatory petition need be signed by only one qualified voter. If this be true, as contended on oral argument by counsel for respondent, any one citizen might file thousands of such petitions, all of which would have to be presented to the legislature for its action, and which would take precedence over all other measures, except appropriation bills, thus preventing the consideration of other vital matters. It can be easily seen how such an interpretation might result in the absolute breaking down of the legislative branch of the state government. It might lead to the bankruptcy of the state, for under the provision in question every one of such proposed measures would have to be advertised. It needs no

elaboration for any one to see the disaster which might
follow the interpretation sought. It is no answer to such
a contention to say that it is improbable that such a
situation might arise. It is our duty to give the article
an interpretation which will avoid consequences so
fraught with baneful possibilities, for we are not jus-
tified in assuming that either the legislature or the
people in adopting article 19 of the constitution intended
to rear a Juggernaut which might destroy the state
government.

2. It is conceded by all that a petition signed by
qualified electors who in number equal ten per centum
of the whole number of votes cast for justice of the
supreme court entitles the same to be filed by the secre-
tary of state. Of the correctness of this view there
seems to be no doubt. Hence, should we not presume
that it was the intention that, until the legislature fixes
a less number (conceding for the purpose of this matter
that the legislature has such a right), no petition con-
taining less than such ten per centum of signers should
be filed? Such a conclusion can be reached by a process
of construction in accord with well-recognized canons.
Any other conclusion might result in absurd or mis-
chievous consequences. Counsel for petitioner call our
attention to the case of State v. Harris, 74 Or. 573, 144
Pac. 109, Ann. Cas. 1916A, 1156, where it is said:

"The first point made is that said section does not
provide definitely what per cent of the electors shall be
required on petitions for a recall, and that this is left
to be determined by county clerks or other proper officers
with whom the petitions are required to be filed. But
we cannot assent to this contention. The clause of this
section relating to this matter is as follows:

" 'There may be required twenty-five per cent, but
not more, of the number of electors who voted in his
district at the preceding election for justice of the
supreme court to file their petition demanding his recall
by the people.'

"This section authorizes the legislative assembly or the people to enact laws to 'aid' the operation thereof, and it is competent for the legislative assembly or the people to provide by law that it shall be sufficient for a recall petition to be signed by 10 or 15 per cent of the electors, or any per cent thereof less than 25; but not more than 25 per cent can be required. Until the legislative assembly or the people enact the contrary, every petition for a recall must be signed by not less than 25 per cent of the electors of the county or election district."

Counsel say, however, that this language is obiter dictum. Strictly speaking, this may be true; but it appears from the opinion that the point was urged upon the court and fully considered by it, and that the conclusion reached was after due deliberation, which would seem to entitle it to some consideration at our hands.

For the reasons given the petition should be denied.

It is so ordered.