HONORABLE KENNY GUINN, Governor of the State of Nevada, Petitioner, v. THE LEGISLATURE OF THE STATE OF NEVADA; HONORABLE LORRAINE T. HUNT, President of the Senate; HONORABLE RICHARD D. PERKINS, Speaker of the Assembly; MARK E. AMODEI, Senator; TERRY CARE, Senator; MAGGIE CARLTON, Senator; BARBARA CEGAVSKE, Senator; BOB COFFIN, Senator; WARREN B. HARDY, Senator; BERNICE MATHEWS, Senator; MIKE McGINNESS, Senator; JOSEPH M. NEAL, JR., Senator; DENNIS NOLAN, Senator; ANN O'CONNELL, Senator; WILLIAM J. RAGGIO, Senator; RAYMOND D. RAWSON, Senator; DEAN A. RHOADS, Senator; MICHAEL SCHNEIDER, Senator; RAYMOND C. SHAFFER, Senator; SANDRA TIFFANY, Senator; DINA TITUS, Senator; RANDOLPH TOWNSEND, Senator; MAURICE WASHINGTON, Senator; VALERIE WIENER, Senator; BERNIE ANDERSON, Assemblyman; WALTER ANDONOV, Assemblyman; SHARRON E. ANGLE, Assemblywoman; MORSE ARBERRY, JR., Assemblyman; KELVIN D. ATKINSON, Assemblyman; BOB BEERS, Assemblyman; DAVID BROWN, Assemblyman; BARBARA E. BUCKLEY, Assemblywoman; JOHN C. CARPENTER, Assemblyman; VONNE S. CHOWNING, Assemblywoman; CHAD CHRISTENSEN, Assemblyman; JERRY D. CLA-

---

BORN, Assemblyman; TOM COLLINS, Assemblyman; MARCUS CONKLIN, Assemblyman; JASON GEDDES, Assemblyman; DAWN GIBBONS, Assemblywoman; CHRIS GIUNCHIGLIANI, Assemblywoman; PETE GOICOECHEA, Assemblyman; DAVID GOLDWATER, Assemblyman; TOM GRADY, Assemblyman; JOSH GRIFFIN, Assemblyman; DON GUSTAVSON, Assemblyman; JOE HARDY, Assemblyman; LYNN C. HETTRICK, Assemblyman; WILLIAM C. HORNE, Assemblyman; RON KNECHT, Assemblyman; ELLEN M. KOIVISTO, Assemblywoman; SHEILA LESLIE, Assemblywoman; R. GARN MABEY, JR., Assemblyman; MARK A. MANENDO, Assemblyman; JOHN A. MARVEL, Assemblyman; KATHY McCLAIN, Assemblywoman; BOB McCLEARY, Assemblyman; HARRY MORTENSON, Assemblyman; JOHN OCEGUERA, Assemblyman; GENIE OHRENSCHALL, Assemblywoman; DAVID R. PARKS, Assemblyman; PEGGY PIERCE, Assemblywoman; ROD SHERER, Assemblyman; VALERIE WEBER, Assemblywoman; AND WENDELL P. WILLIAMS, Assemblyman, Respondents.

LYNN HETTRICK; GARN MABEY; BOB BEERS; VALERIE WEBER; CHAD CHRISTENSEN; WALTER ANDONOV; DAVID BROWN; SHARRON ANGLE; DON GUSTAVSON; JOHN MARVEL; JOHN CARPENTER; PETE GOICOECHEA; ROD SHERER; TOM GRADY; RON KNECHT; BARBARA CEGAVSKE; MIKE McGINNESS; ANN O'CONNELL; SANDRA TIFFANY, AND MAURICE WASHINGTON, Members of the Legislature of Nevada, Counter-Petitioners, v. HONORABLE KENNY GUINN, Governor of the State of Nevada, and THE LEGISLATURE OF THE STATE OF NEVADA, Counter-Respondents.

No. 41679

July 10, 2003                              71 P.3d 1269

*Brian Sandoval*, Attorney General, and *Jeff E. Parker*, Solicitor General, Carson City, for Petitioner and Counter-Respondent.

*Brenda J. Erdoes*, Legislative Counsel, Carson City, for Respondents.

*Allison, MacKenzie, Russell, Pavlakis, Wright & Fagan, Ltd.*, and *Mark E. Amodei*, Carson City, for Respondents Care and Amodei.

*Barbara E. Buckley*, Carson City, in Proper Person.

*Beckley Singleton, Chtd.*, and *Daniel F. Polsenberg* and *Beau Sterling*, Las Vegas, for Counter-Petitioners.

*Jeffrey S. Blanck*, General Counsel, Washoe County School District, Reno; *Walther Key Maupin Oats Cox & LeGoy* and *Michael E. Malloy*, Reno, for Amicus Curiae Washoe County School District.

*Dyer, Lawrence, Penrose, Flaherty & Donaldson* and *Michael W. Dyer*, Carson City, for Amici Curiae Nevada State Education Association, Clark County Education Association, Education Support Employees Association of Clark County, and Washoe Education Association.

*Ellsworth Moody & Bennion, Chtd.*, and *Keen L. Ellsworth*, Las Vegas, for Amicus Curiae Nevada Congress of Parents and Teachers Association.

*C. W. Hoffman Jr.*, General Counsel, Las Vegas, for Amicus Curiae Clark County School District.

*Law Offices of Thomas D. Beatty* and *Thomas D. Beatty,* Las Vegas, for Amici Curiae Clark County Association of School Administrators, Washoe County Education Administrators, and Nevada Association of School Administrators.

*McCracken Stemerman Bowen & Holsberry* and *Richard G. McCracken,* Las Vegas, for Amici Curiae Nevada State AFL-CIO and Nevada State Employees Association, AFSCME, Local 4041.

*McDonald Carano Wilson LLP* and *John J. Laxague, Michael A. T. Pagni, Jeffrey A. Silvestri* and *Thomas R. C. Wilson II,* Reno, for Amici Curiae Nevada Taxpayers Association, Associated Builders and Contractors—Sierra Nevada Chapter, AGC Nevada, Nevada Association of Mechanical Contractors, Sierra Chemical Company, Polymer Plastics Corporation, Barth Electronics, EDAWN/Western Nevada Development Authority, Nevada Consumer Finance Corporation, Nevada Petroleum Marketers and Convenience Store Association, Cal-Neva Franchise Owners Association, 7-Eleven Franchise Owners Association of Southern Nevada, Nevada Resident Agents Association, Monte L. Miller and Joshua C. Miller, Nevada Bankers Association, Nevada Manufacturers Association, Nevada Motor Transport Association, Retail Association of Nevada, Tiberti Fence Company, Carson City Chamber of Commerce, Las Vegas Chamber of Commerce, Nevada Franchised Auto Dealers Association, Nevadans for Real Tax Fairness, Household International, Nevada Corporate Headquarters—Cort Christie, Robert List, Henderson Chamber of Commerce, Thomas Powell, Pic-Mount Imaging Corp., Phoenix Holdings of Nevada, Inc., Nevada Association of Independent Businesses, Chain Drug Council of Nevada, and Grocery Industry Council of Nevada.

*Thomas J. Ray,* General Counsel, Las Vegas, for Amicus Curiae University and Community College System of Nevada.

*James T. Richardson,* Reno, for Amicus Curiae Nevada Faculty Alliance.

*Layne T. Rushforth,* Las Vegas, for Amicus Curiae Nevada Concerned Citizens.

*Wilson & Barrows* and *Stewart R. Wilson,* Elko; *Gregory T. Broderick,* Sacramento, California, for Amicus Curiae Pacific Legal Foundation.

Before the Court EN BANC.

## OPINION

By the Court, AGOSTI, C. J.:

The Governor of Nevada has petitioned this court for a writ of mandamus declaring the Legislature to be in violation of the Nevada Constitution, and compelling the Legislature to fulfill its constitutional duty to approve a balanced budget—including an annual tax to defray the state's estimated expenses for the biennium beginning July 1, 2003, and appropriations to fund public education during that fiscal period—by a time certain. We agree that our intervention is appropriate in this extraordinary circumstance.

The Legislature failed to fund education in the 72nd Regular Session and in two special sessions and is evidently in a deadlock over the means of raising the necessary revenues. As a result,

Nevada's public educational institutions are in crisis because they are unable to proceed with the preparations and functions necessary for the 2003-2004 school year.

It is apparent that the Legislature has failed to fulfill its constitutional mandate because of the conflict among several provisions of the Nevada Constitution. Therefore, we, in our judicial role as interpreters of the Nevada Constitution, must reconcile the provisions which cause the present crisis.

Because we conclude that the individual legislators and the Lieutenant Governor have not violated their constitutional duties, we deny the petition as to them as individuals. We grant the petition as to the Legislature as a body. We order the Legislature to fulfill its obligations under the Constitution of Nevada by raising sufficient revenues to fund education while maintaining a balanced budget. Due to the impasse that has resulted from the procedural and general constitutional requirement of passing revenue measures by a two-thirds majority, we conclude that this procedural requirement must give way to the substantive and specific constitutional mandate to fund public education. Therefore, we grant the petition in part and order the clerk of this court to issue a writ of mandamus directing the Legislature of the State of Nevada to proceed expeditiously with the 20th Special Session under simple majority rule.

## DISCUSSION

The Governor filed this writ petition after the Legislature failed to approve a balanced budget before the start of fiscal year 2004, which started on July 1, 2003. The Governor is responsible for the faithful execution[1] of the state's laws and is also responsible for proposing a state budget and submitting it to the Legislature.[2] Pursuant to Article 9, Section 2 of our Constitution, the Legislature is responsible for approving a balanced budget. Also, Article 11, Section 6 of our Constitution compels the Legislature to support and maintain the public school system.[3] The Legislature must appropriate the money needed for all state government expenditures and provide for an annual tax to defray the state's estimated expenses for the two fiscal years following its regular biennial session.[4] Fiscal year 2004 began on July 1,[5]

---

[1]Nev. Const. art. 5, § 7.

[2]*Id.* art. 4, § 2(3).

[3]Nev. Const. art. 11, § 6 provides that ''[i]n addition to other means provided for the support and maintenance of [the state] university and common schools, the legislature shall provide for their support and maintenance by direct legislative appropriation from the general fund.''

[4]Nev. Const. art. 9, § 2(1) provides that ''[t]he legislature shall provide by law for an annual tax sufficient to defray the estimated expenses of the state for each fiscal year.''

[5]Nev. Const. art. 9, § 1.

yet the Legislature has thus far failed in its obligation to support and maintain the public school system. No money has been appropriated to fund this constitutionally mandated obligation. Our Constitution's Article 4, Section 19 provides that the State Treasurer cannot release general funds from the state treasury without specific legislative appropriation.

The Governor began the 2003 legislative session with a request for $980 million in new revenues to balance his proposed budget for the 2003-2005 biennium. The Legislature did not fund education in its 72nd Regular Session, which ended on June 3, 2003,[6] but, after making substantial cuts in the Governor's budget, appropriated $3,264,269,361 for various government functions. The Governor signed these appropriations into law.[7] Existing revenues are expected to meet these appropriations.

Since the conclusion of the Legislature's general session, two special sessions have been convened. On June 3, 2003, the Governor convened the Legislature in the 19th Special Session to appropriate funds for the K-12 school system and to provide an adequate tax plan to provide for funding. The Legislature failed to reach an agreement on a tax plan. The Governor adjourned the 19th Special Session at the request of the Senate Majority Leader and the Speaker of the Assembly on June 12, 2003. That same day, the Governor convened the Legislature for a second special session to begin on June 25, 2003. The Legislature convened, but had not passed a bill to raise the required revenues for the educational system by the start of the new fiscal year, July 1, 2003. The Senate and Assembly recessed by mutual consent, because of their inability to pass a revenue measure by a two-thirds majority.

Since its enactment in 1864, the Nevada Constitution has required a simple majority of each house to pass a bill or joint resolution.[8] Article 4, Section 18(1) provides that "a majority of all the members elected to each house is necessary to pass every bill or joint resolution." In 1993, the Legislature rejected a resolution that proposed to amend the Constitution to create an exception to the simple majority rule and require a two-thirds majority of each house to increase existing taxes or impose new taxes. Ultimately, by initiative, the citizens accepted an identical proposal as a constitutional amendment. The constitutionally required second vote on the initiative occurred in 1996, at a time when the state enjoyed a budget surplus and public sentiment strongly favored restricted

[6]Nev. Const. art. 4, § 2(2) limits the regular session to 120 days.

[7]All but three sections of this law took effect on July 1, 2003. Two provisions took effect on June 3, 2003, and one other will take effect on July 1, 2004. 2003 Nev. Stat., ch. 328.

[8]*Debates & Proceedings of the Nevada State Constitutional Convention of 1864,* at 837 (Andrew J. Marsh off. rep., 1866).

tax increases. Article 4, Section 18(2) of our Constitution now requires a two-thirds vote of each house "to pass a bill or joint resolution which creates, generates, or increases any public revenue in any form, including but not limited to taxes, fees, assessments and rates, or changes in the computation bases for taxes, fees, assessments and rates."

In 1997, 1999 and 2001, the Legislature was able to work within these new constraints without major difficulties because the state operated under a budget surplus and no major tax increases required a vote in the Legislature. By 2003, however, the state's economic picture had changed drastically. The Legislature, faced with a rapidly increasing population, a substantial budget deficit and record-high needs, was unable to reach a two-thirds majority and left its constitutional obligations unfulfilled.

The Legislature's failure to fulfill its constitutional duties by the beginning of the new fiscal year has precipitated an imminent fiscal emergency.[9] Nevada now faces an unprecedented budget crisis. Schools have not been funded for the upcoming school year. Teachers have not been hired. Educational programs have been eliminated. Planning for the academic year is not possible, and the state's bond rating may be jeopardized. This court has been petitioned to resolve the crisis. In light of the above circumstances, it appears there is no plain, speedy and adequate remedy in the ordinary course of law, and this court's intervention is warranted.[10]

At the heart of this case is the two-thirds supermajority requirement for revenue-raising legislation. The Legislature is unable to fulfill its constitutional duties to fund the public schools and to adopt a balanced budget because it has not met the two-thirds vote requirement. The Legislature's failure to provide funds for public education, to pass the concomitant revenue generating package and to balance the state's budget after having had the opportunities of one general session and two special sessions to do so, leads us to the inevitable conclusion that it is futile to order the Legislature to debate further within the parameters of Article 4, Section 18(2). As constitutional construction is purely a province of the judici-

---

[9]Some of the pleadings argue that no emergency exists because the Governor and Legislature have methods of providing for education. We have no authority, under the separation of powers doctrine, to compel either the Governor or the Legislature to employ such methods to resolve any impasse.

[10]Nev. Const. art. 6, § 4; NRS 34.160 (providing that a writ of mandamus may issue to compel the performance of an act that the law especially enjoins as a duty resulting from an office, trust or station); NRS 34.170 (stating that a writ of mandamus may issue when there is no plain, speedy and adequate remedy in the ordinary course of law).

ary,[11] we undertake to resolve the tension between the Legislature's constitutional obligation to fund public education and the constitutional provisions requiring a simple majority to enact appropriations bills but a two-thirds majority to generate or increase public revenue to fund those appropriations.[12]

Clearly, this court has no authority to levy taxes or make appropriations. Only our Legislature has been given the constitutional mandate to make appropriations, levy taxes, and to balance the state's budget.[13] However, when constitutional provisions are incompatible with one another or are unworkable, or when the enforcement of one prevents the fulfillment of another, this court must exercise its judicial function of interpreting the Constitution and attempt to resolve the problem.

When construing constitutional provisions, we apply the same rules of construction used to interpret statutes.[14] Our task is to ascertain the intent of those who enacted the provisions at issue, and "to adopt an interpretation that best captures their objective. We must give words their plain meaning unless doing so would violate the spirit of the provision."[15] Whenever possible, we construe provisions so that they are in harmony with each other.[16] Specific provisions take precedence over general provisions.[17] Finally, constitutional provisions should be interpreted so as to avoid absurd consequences and not produce public mischief.[18]

---

[11]*Marbury v. Madison,* 5 U.S. 137, 178 (1803); *State of Nevada v. Rosenthal,* 93 Nev. 36, 41, 559 P.2d 830, 834 (1977).

[12]We note that Article 4, Section 18(3) allows a simple majority of each legislative house's members to refer to the people any measure that creates, generates, or increases revenue. Under this section, however, the referral may only be made at the next general election, which will not occur until November 2004. NRS 293.12755. This sixteen-month delay renders any remedy under Section 18(3) inadequate, given the immediacy of the fiscal and educational crises facing our state.

[13]Nev. Const. art. 3, § 1 (providing for separation of powers); *id.* art. 4, § 1 (vesting state's legislative authority in Senate and Assembly); *id.* art. 4, § 18; *id.* art. 9, § 2.

[14]*Nevada Mining Ass'n v. Erdoes,* 117 Nev. 531, 538, 26 P.3d 753, 757 (2001).

[15]*Id.*

[16]*See Bowyer v. Taak,* 107 Nev. 625, 627, 817 P.2d 1176, 1177 (1991); *see also People v. Anderson,* 493 P.2d 880, 886 (Cal. 1972).

[17]*SIIS v. Surman,* 103 Nev. 366, 368, 741 P.2d 1357, 1359 (1987).

[18]*State v. Brodigan,* 44 Nev. 306, 311, 194 P. 845, 846-47 (1921).

Nevada's Constitution clearly expresses the vital role that education plays in our state in Article 11. Of particular importance are Sections 1, 2, and 6. Section 1 mandates:

> The legislature shall encourage by all suitable means the promotion of intellectual, literary, scientific, mining, mechanical, agricultural, and moral improvements, and also provide for a superintendent of public instruction and by law prescribe the manner of appointment, term of office and the duties thereof.

Section 2 mandates:

> The legislature shall provide for a uniform system of common schools, by which a school shall be established and maintained in each school district at least six months in every year . . . and the legislature may pass such laws as will tend to secure a general attendance of the children in each school district upon said public schools.

And Section 6 requires the Legislature to provide for the support and maintenance of the public schools.

Our Constitution's framers strongly believed that each child should have the opportunity to receive a basic education.[19] Their views resulted in a Constitution that places great importance on education. Its provisions demonstrate that education is a basic constitutional right in Nevada.

When a procedural requirement that is general in nature prevents funding for a basic, substantive right, the procedure must yield. Here, the application of the general procedural requirement for a two-thirds majority has prevented the Legislature as a body from performing its obligation to give life to the specific substantive educational rights enunciated in our Constitution. We agree with the Wyoming Supreme Court that "[c]onstitutional provisions imposing an affirmative mandatory duty upon the legislature are judicially enforceable in protecting individual rights, such as educational rights."[20] It is paramount that we give Section 18(2) a construction that will preserve the basic right of education.[21] Other states with

---

[19]*See Debates & Proceedings of the Nevada State Constitutional Convention of 1864,* at 567-72 (Andrew J. Marsh off. rep., 1866).

[20]*Campbell County School Dist. v. State,* 907 P.2d 1238, 1264 (Wyo. 1995); *see also Washakie Co. Sch. Dist. No. One v. Herschler,* 606 P.2d 310 (Wyo. 1980).

[21]*See Montana Power Co. v. Public Service Com'n,* 26 P.3d 91, 96 (Mont. 2001) (stating that constructions which preserve constitutional rights are paramount).

constitutional provisions similar to ours have also given significant import to the educational clauses of their constitutions.[22]

Our Legislature has failed to accomplish its constitutionally mandated tasks of funding Nevada's public education system and balancing the budget. In order to allow the Legislature to fulfill its constitutional mandate in this regard, the general language of Section 18(2) must give way to the simple majority requirement of Article 4, Section 18(1) in order that the specific provisions concerning education are not defeated.

Based upon the Legislature's failure over the last several weeks to fund the constitutionally mandated arena of education, we observe that its adherence to the Constitution's two-thirds majority provision defeats the Constitution's public education funding requirements. We conclude that an irreconcilable conflict exists with respect to the relevant constitutional provisions. Because the Governor has seen fit to petition this court in mandamus, and because evidently further legislative discussions are futile, it becomes the responsibility of this court to order the Legislature to fund public education and to balance the budget. It is a waste of public resources to simply tell the Legislature to forge on and deliberate and negotiate further, since that body has failed to perform its constitutionally required function. As a result, this court is faced with the onerous task of weighing the various constitutional provisions and, in effect, prioritizing them.

The two-thirds majority requirement is a procedural requirement. It is a process requirement by which legislative action is accomplished and decisions that weigh the public interests are accounted for. In the area of taxation this means that the Legislature must agree by a two-thirds majority as to which mechanisms will be employed to generate revenue. Without a two-thirds majority, revenue measures may not be enacted. This general constitutional provision does not purport to say what the substance of the revenue measures ought to be, only that whatever they be, they are acceptable to two-thirds of the elected members of each house of the Legislature.

In contrast, the Constitution requires specifically, as a matter of substantive constitutional law, that public education be funded. The framers have elevated the public education of the youth of Nevada to a position of constitutional primacy. Public education is a right that the people, and the youth, of Nevada are entitled, through the Constitution, to access. If the procedural two-thirds revenue vote requirement in effect denies the public its expectation

---

[22]*See, e.g., Brigham v. State,* 692 A.2d 384, 391-95 (Vt. 1997); *Lake View Sch. Dist. No. 25 v. Huckabee,* 91 S.W.3d 472, 492-95 (Ark. 2002), *cert. denied,* 538 U.S. 1035 (2003).

of access to public education, then the two-thirds requirement must yield to the specific substantive educational right.

The Legislature must resume its work of funding education and selecting appropriate methods of revenue generation to balance the state's budget. Therefore, we grant the petition as to the Legislature of the State of Nevada and direct this court's clerk to issue a writ of mandamus directing the Legislature to proceed expeditiously with the 20th Special Session under simple majority rule. The relief prayed for in the petition as to the Lieutenant Governor and the individual legislators and in the counter-petition is denied.

SHEARING, ROSE, LEAVITT, BECKER and GIBBONS, JJ., concur.

MAUPIN, J., dissenting in part and concurring in part:

The Governor's petition seeks our intervention to judicially pronounce that the Legislature has violated Articles 9 and 11 of the State Constitution by its failure to fund the education budget and balance the budget over the next two fiscal years. He also seeks an order requiring legislative compliance with these constitutional provisions, via passage of taxing measures to defray the state's estimated expenses for the biennium beginning July 1, 2003, within a time certain. I would decline the Governor's invitation to intervene in the legislative budgetary process—a process that represents the discretionary authority of a co-equal branch of the state government—*at this time*. In this, I would note that none of the parties directly named in this litigation, including the Governor, have requested the specific relief we provide today. I also note that the legislative response to the petition acknowledges the Legislature's constitutional obligations concerning the budget.

The Governor filed this writ petition because the Legislature failed to approve a balanced budget before the start of the new fiscal year. I acknowledge, with the majority, the following undisputed features of this controversy. First, that the Governor is responsible for seeing that this state's laws are faithfully executed[1] and for proposing a state budget and submitting it to the Legislature.[2] Second, that our Constitution requires the Legislature to approve a balanced budget. Third, that it also compels the Legislature to support and maintain the public school system.[3] Fourth, that the Legislature must appropriate the money needed for all state government expenditures and must provide for an annual

---

[1]Nev. Const. art. 5, § 7.

[2]*Id.* art. 4, § 2(3).

[3]Nev. Const. art. 11, § 6 provides that "[i]n addition to other means provided for the support and maintenance of [the state] university and common schools, the legislature shall provide for their support and maintenance by direct legislative appropriation from the general fund."

tax to defray the state's estimated expenses for the two fiscal years following its regular biennial session.[4] Fifth, that the state's current fiscal year commenced July 1, 2003,[5] and that the State Treasurer may not release general funds from the state treasury without specific legislative appropriation.[6] All of this notwithstanding, now that the Governor has called the Legislature into special session to resolve the budget impasse over the Distributive School Account (DSA), the Legislature is under no express constitutional duty to pass its appropriations and tax bills by the beginning of the fiscal year.[7] Indeed, in the last ten years, the Legislature has worked beyond the fiscal year's beginning three times. That the Legislature has had more than enough time to comply with the funding mandates is constitutionally beside the point. Because the first quarterly distribution of funds to the various county school districts for this fiscal year will not occur until August 1, 2003,[8] there is still a short window within which the Legislature can itself insure compliance with the constitutional mandate for public school funding. Accordingly, I would defer the relief afforded by today's majority until it becomes evident that the constitutional mandate to fund education will not be satisfied in time for compliance with the statutory requirements for distribution of state funds to local school districts.

*Remedies sought by the Governor*

Simply stated, the Governor seeks a judicial declaration that the Legislature has violated the Constitution and an order that the Legislature comply with it. This, in my view, will not provide a solution, other than to chastise the Legislature for its inability to deal with the voting impasse in which it is now embroiled. The Legislature concedes its constitutional obligation to fund public education. Why the relief actually sought in the petition will not effect a concrete solution is explained immediately below.[9]

---

[4]Nev. Const. art. 9, § 2(1) provides that ''[t]he legislature shall provide by law for an annual tax sufficient to defray the estimated expenses of the state for each fiscal year.''

[5]Nev. Const. art. 9, § 1.

[6]*Id.* art. 4, § 19.

[7]Article 4, Section 2(2) of the State Constitution limits regular legislative sessions to 120 days and renders void legislative action taken at any other time except where, as here, the Governor has convened a special legislative session.

[8]NRS 387.124(1) requires the state superintendent of public instruction to apportion the state DSA in the state general fund among the several county school districts on a quarterly basis, starting on or before August 1, November 1, February 1, and May 1 of each year. The DSA must be funded for the current biennium for this to occur.

[9]*See Campaign for Fiscal Equity, Inc. v. State of New York,* 801 N.E.2d 326 (N.Y. 2003) (noting that simple direction of education authorities to

As a threshold matter, the separation of powers doctrine stands as an impediment to our immediate involvement. Subject only to the reservation of the legislative power to the people in Article 19, our Constitution bestows all legislative authority upon the Legislature.[10] It seems well settled that "a court will not issue the writ of mandamus to compel a state legislature or an officer of such legislature to exercise their legislative functions or to perform duties involving the exercise of discretion."[11] This rule is expressed in the Nevada Constitution:

> The powers of the Government of the State of Nevada shall be divided into three separate departments,—the Legislative,—the Executive and the Judicial; and no persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions, appertaining to either of the others, except in the cases expressly directed or permitted in this constitution.[12]

Certainly, the specifics of creating a budget fall within the discretion of the Legislature.

We are asked in the Governor's petition, at least implicitly, to intervene in the current legislative controversy to force individual members of the Legislature to vote (exercise their discretion) in a certain way. Because the people of this state elected the individual members of the Legislature and their primacy to vote as they so choose, we cannot grant this relief. The pre-eminent right of individual lawmakers is to vote their consciences on individual measures. Their individual votes do not violate the Constitution, their votes as a body *may* do so.

For similar reasons, we either cannot or should not, as suggested by some of the legislators, order the Governor to amend the parameters of the special session to open previously closed budget accounts. First, this form of relief would only make a balanced budget *possible;* second, such relief would impinge upon the pre-

---

follow the New York State Constitution is problematic in terms of effecting compliance and in terms of providing adequate judicial redress for a constitutionally infirm education funding system).

[10]Nev. Const. art. 4, § 1; *see generally* Nev. Const. art. 19.

[11]R.T.K., Annotation, *Mandamus to Members or Officer of Legislature,* 136 A.L.R. 677, 677 (1942); *e.g., Wells v. Purcell,* 592 S.W.2d 100 (Ark. 1979) (holding that a writ of mandamus could not be issued to compel legislative officers to adjourn or attempt to adjourn the legislature, or to obtain an adjournment from the governor); *Limits v. President of the Senate,* 604 N.E.2d 1307 (Mass. 1992) (denying mandamus relief to compel the state legislature's action on a proposed constitutional amendment); *State ex rel. Daschbach v. Meyers,* 229 P.2d 506 (Wash. 1951) (declining to issue a writ of mandamus compelling legislature to affix on a bill a different date of passage).

[12]Nev. Const. art. 3, § 1(1).

rogatives of the executive branch to define the scope of special sessions.[13] This is underscored by the fact that a balanced budget is possible now; it is just improbable under the current parameters of the special session. Thus, in my view, we cannot constitutionally order any member of the Legislature to vote in a certain way and we cannot order the Governor to open budgets to create a mere possibility that the Legislature can arrive at a balanced budget.[14] As of now, neither the Governor nor any individual legislator has violated the Constitution.[15] This having been said, compliance with the constitutional mandate to appropriate state education funding must occur in sufficient time to allow the quarterly distribution to county school districts on or before August 1, 2003, per NRS 387.124(1).

*Remedy afforded by the court*

Given our intervention, the petition necessarily seeks our resolution of separate mandatory provisions in the Nevada Constitution that *may* remain in conflict in the current application. Section 6 of Article 11 mandates legislative funding for Nevada schools, the budget for which may be set by a simple majority of each house of the Legislature. Section 2(1) of Article 9 requires that additional taxes be created whenever projections indicate state revenue will be insufficient to defray estimated expenses of the state. And Section 18(2) of Article 4 requires that any increase in taxes must be approved by two-thirds of the members of each legislative body. Thus, while the state's education budget may be set by simple majorities of each legislative house, any new taxes to fund the budget may only be accomplished via supermajority. These provisions are not inherently in conflict; they only conflict in the event education funding is prevented by an inability to balance the budget with sufficient funding mechanisms. That is the current state of affairs, as described by the majority.

I would now turn to address the following observations submitted by the Legislature in its response to the Governor's petition:

> With respect to the allegation that the Legislature has not balanced the state budget for the next two fiscal years, and not done so in a timely manner, that allegation is simply erroneous. . . .
>
> . . . .

---

[13]*See State v. Dickerson*, 33 Nev. 540, 562, 113 P. 105, 111 (1910).

[14]*Id.*

[15]I recognize the majority's concern that failure to provide immediate appropriations to fund the DSA will impede county school district planning and the hiring of personnel. While this is very important, it does not, in my view, require resolution of the constitutional impasse by immediate intervention by this court.

> . . . [T]he Legislature has worked diligently to fulfill its constitutional duties and continues to engage in such work, and . . . complete its duties as soon as possible.
>
> . . . .
>
> . . . . The Answering Respondents [the Legislature] agree that the Legislature has a mandatory duty to provide money for education and to ensure adequate revenue to pay state expenses.

The Legislature goes on in its papers filed in this case to request our forbearance to allow it to acquit its admitted constitutional responsibility to fund a state education budget. I can only observe that this Legislature has completed the mandatory 120-day session, has been convened twice in special session and has failed to fund the DSA and balance the budget. It has had plenty of time to fulfill its constitutional obligations. I would give the Legislature more time; but the exigencies of the current situation require some dispatch.

Absent the immediate relief now being afforded, the Governor, of course, would have been free to amend the scope of the special session to facilitate a resolution. Also, individual legislators could, upon further deliberation, have relented to help comply with the supermajority requirements. And, as stated, there was still a window of opportunity for the two branches of government to resolve the impasse without our assistance. In the absence of an education budget crafted and funded in time to effect statutory distribution of funds to the county school districts, we could appropriately declare the impasse at an end because time then would truly be of the essence.[16] Accordingly, I would give the Legislature until July 28, 2003, to resolve the impasse[17] before intervening and considering the relief afforded today, along with other possibilities.[18]

I take this opportunity to comment upon the dynamic that brings us to this point in our state's history. For years, a philosophical debate over provision of state services has been developing and is highlighted by the unparalleled population growth here in Nevada

---

[16]*See supra* note 8.

[17]*Id.*

[18]Again, we are powerless to order co-equal branches of government to exercise individual acts of constitutional discretion. Our authority depends upon whether extraordinary relief is warranted and in exercising our authority to grant relief, we would be restricted to an interpretation of the Constitution, utilizing recognized tenets of statutory construction. *See Nevada Mining Ass'n v. Erdoes,* 117 Nev. 531, 538, 26 P.3d 753, 757 (2001) (when construing constitutional provisions, the Nevada Supreme Court uses the same rules of construction that are used to interpret statutes).

and economic conditions governed by external forces, including those attendant to the attacks of September 11, 2001. This debate is the signal feature of the 2003 legislative sessions. The primary concerns of both sets of antagonists involve the quality of state services, the extent to which state services need to be expanded and/or improved, including education services for our children, and unwise or wasteful use of state resources; resources that are paid for by the citizens of this state. This debate has been conducted in a true democratic spirit and both sides have admirably stated their cases. In my view, taking judicial notice of the public debate, considerable waste has been revealed, services can be improved, and many in our state government have been working to improve the situation. Nevertheless, it is not evident that the totality of fiscal problems facing Nevada will be solved in the near term. What is evident is that our schools must, as matter of constitutional law, be funded on or before August 1, 2003.