NC-DSH, INC., a Nevada Corporation dba VALLEY HOSPI-
TAL MEDICAL CENTER, Appellant, v. CLARK L.
GARNER, Individually, as Special Administrator of
the Estate of Carole L. Garner, Deceased, and as Spe-
cial Administrator of the Estate of Bobby John
Garner, Deceased; STEVEN G. GARNER; RHONDA V.
SCHWANTES; and AARON K. GARNER, Respondents.

No. 49029

October 29, 2009

218 P.3d 853

*Tuverson & McBride* and *Eric K. Stryker*, Las Vegas, for
Appellant.

*Crockett & Myers* and *J.R. Crockett Jr.* and *Richard W. Myers*,
Las Vegas, for Respondents.

## OPINION

By the Court, PICKERING, J.:

Valley Hospital appeals from an order vacating a stipulated final judgment under NRCP 60(b) for fraud on the court. The fraud was committed by Lawrence Davidson, the lawyer who brought this malpractice case for the Garner family, plaintiffs below. Without the knowledge or approval of his clients, Davidson settled their case for $160,000, forged the necessary settlement papers, and disappeared with the money. Because Davidson was the Garners' agent, albeit a

faithless one, the district court conditioned its order on the Garners giving Valley Hospital credit for the $160,000 against any eventual recovery they might make. Out both its $160,000 and the litigation peace it expected in return, Valley Hospital appeals.

Valley Hospital characterizes Davidson's misconduct as "intrinsic fraud." It argues that the district court should have ruled the Garners' motion untimely, because it was not filed within six months of the stipulated judgment being entered as NRCP 60(b)(3) requires; further, that the Garners should have proceeded by independent action, not motion, to set aside the judgment. The Hospital also maintains that Davidson had actual and apparent authority to settle the Garners' claims: Unlike the Garners, who chose Davidson as their lawyer, Valley Hospital and its lawyer had no choice but to deal with Davidson; it is bad policy and unfair, the Hospital argues, to visit the consequences of an opposing party's lawyer's fraud on innocent parties like Valley Hospital and its lawyer, who took all reasonable steps to document a valid, enforceable settlement. Finally, the Hospital argues that the district court erred in not finding that the Garners ratified the settlement.

We reject Valley Hospital's arguments and affirm. The district court found that Davidson committed "fraud upon the court," which is not subject to NRCP 60(b)(3)'s six-month limitations period. *Murphy v. Murphy*, 103 Nev. 185, 186, 734 P.2d 738, 739 (1987). Although true fraud on the court is rare and requires "egregious misconduct," *Occhiuto v. Occhiuto*, 97 Nev. 143, 146 n.2, 625 P.2d 568, 570 n.2 (1981) (quoting *United States v. International Telephone & Tel. Corp.*, 349 F. Supp. 22, 29 (D. Conn. 1972)), the district court did not abuse its discretion in finding such fraud by Davidson here. Nor were its findings that Davidson lacked authority and the Garners did not ratify the settlement clearly erroneous. Finally, while the Hospital argues the Garners' motion was untimely because not made within six months of entry of judgment, it did not establish prejudicial delay.

## DISCUSSION

The Garners brought their motion to set aside the stipulated judgment under NRCP 60(b). As amended effective January 1, 2005, NRCP 60(b) largely replicates Fed. R. Civ. P. 60(b), as written before the Federal Rules' 2007 revisions.[1] Like its federal counterpart, NRCP 60(b) has two separate provisions that address

---

[1]Nevada's version of Rule 60(b) differs from its federal analog in two respects: (1) Nevada shortens the time limit for bringing a motion under subparagraphs (1)-(3) from one year to six months; and (2) Nevada did not adopt the "catchall" provision in Fed. R. Civ. P. 60(b)(6), which allows "any other reason that justifies relief" as a basis for a Federal Rule 60(b) motion. The 2005 amendment to NRCP 60(b) added this final sentence from the then-existing version of Fed. R. Civ. P. 60(b): "Writs of coram nobis, coram vobis, audita

fraud. The first is NRCP 60(b)(3), which provides, "On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for . . . fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party." The second provision addressing fraud appears in NRCP 60(b)'s "savings clause." The savings clause says, "This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court."[2] While a motion under NRCP 60(b)(3) must be made "not more than 6 months after the proceeding was taken or the date that written notice of entry of the judgment or order was served," NRCP 60(b) does not specify a time limit for motions seeking relief for "fraud upon the court."

### NRCP 60(b)(3) *does not apply*

Valley Hospital argues that Davidson's fraud was "intrinsic" not "extrinsic" to the stipulated judgment. In its view, this makes the fraud remediable, if at all, only under NRCP 60(b)(3), or by independent action. This argument is flawed, on multiple levels.

Labeling the basis for the Garners' motion "intrinsic" rather than "extrinsic" fraud does not bring it within NRCP 60(b)(3) or make NRCP 60(b)(3)'s six-month limitations period apply. Ever since its 1981 amendment to import the parenthetical phrase— "(whether heretofore denominated intrinsic or extrinsic)"—from its federal model, NRCP 60(b)(3) has applied to both intrinsic and extrinsic fraud. *See Carlson v. Carlson,* 108 Nev. 358, 362 n.6, 832 P.2d 380, 383 n.6 (1992); *Occhiuto,* 97 Nev. at 146 n.2, 625 P.2d at 570 n.2.[3] The 1981 amendment to NRCP 60(b)(3) abrogated the older cases like *Gilbert v. Warren,* 95 Nev. 296, 299,

---

querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action." *See* ADKT No. 276 (Order Amending the Nevada Rules of Civil Procedure, July 26, 2004) (making the changes effective on January 1, 2005). A modernized version of this provision is now Fed. R. Civ. P. 60(e).

[2]Before its 2007 amendment, Fed. R. Civ. P. 60(b) was identical to the language quoted from NRCP 60(b) in the text. The 2007 revision of the Federal Rules rewords Fed. R. Civ. P. 60(b)(3) slightly and moves the "savings clause" to new Fed. R. Civ. P. 60(d)(1) (addressing independent actions but not the grounds therefor) and Fed. R. Civ. P. 60(d)(3), which states, "This rule does not limit a court's power to . . . set aside a judgment for fraud on the court." The commentary states these revisions are to style only, not substance.

[3]*Price v. Dunn,* 106 Nev. 100, 104, 787 P.2d 785, 787 (1990), which cited pre-1981 cases for the relevance of the distinction between intrinsic and extrinsic fraud, was incorrect in doing so as it failed to reference the 1981 amendments and cases interpreting them. *Price* otherwise remains good law.

594 P.2d 696, 698 (1979), and *Manville v. Manville*, 79 Nev. 487, 489-90, 387 P.2d 661, 662 (1963), to the extent they relied on the distinction between intrinsic and extrinsic fraud to decide whether a motion fell under NRCP 60(b)(3) and its six-month deadline. *See* 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2868 (2d ed. 1995) (noting that the distinction between extrinsic and intrinsic fraud "rests on clouded and confused authorities, its soundness as a matter of policy is very doubtful, and it is extremely difficult to apply").

More germane: NRCP 60(b)(3) by its terms *only* applies to fraud "of an adverse party." The district court found that neither Valley Hospital nor its lawyer had any knowledge of or complicity in Davidson's fraud. Davidson victimized them, equally with the Garners. NRCP 60(b)(3) and its six-month limitations period thus do not apply, because the Garners' motion was not based on *"fraud* (whether . . . intrinsic or extrinsic), misrepresentation or other misconduct *of an adverse party*." NRCP 60(b)(3) (emphases added). Other courts, applying like rules to like facts, have so held, and we read our rule no differently. *McKinney v. Boyle*, 404 F.2d 632, 633-34 (9th Cir. 1968) (holding that where the movant's lawyer and non-party wife committed fraud in concluding his case, the motion did not involve fraud "of an adverse party," taking it outside Fed. R. Civ. P. 60(b)(3) and its one-year time limit); *Flowers v. Rigdon*, 655 N.E.2d 235, 236 (Ohio Ct. App. 1995) (holding that, while "[f]raud, *inter partes*, without more, should not be a fraud upon the court, but redress should be left to a motion under [the Ohio counterpart to NRCP] 60(b)(3) or to the independent action," a lawyer who defrauds his clients by stipulating to a bogus judgment concluding their claims commits a "fraud upon the court" (quotation omitted)); *see Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 1102 (9th Cir. 2006) (holding that "[s]ubsection (b)(3) permits relief only when the fraud was committed by 'an adverse party'").

*The Garners were not required to file an independent action*

▬▬█

Nor does it make a difference that the Garners proceeded by motion in the underlying case instead of filing an independent action. "A party is not bound by the label he puts on his papers. A motion may be treated as an independent action or vice versa as is appropriate." Wright, Miller & Kane, *supra*, § 2868 (footnote omitted). Also, this court has already interpreted NRCP 60(b)'s "savings clause" to permit a party seeking to vacate a judgment because of fraud on the court to "proceed by motion or [to] bring an independent action," *Murphy v. Murphy*, 103 Nev. 185, 186, 734 P.2d

738, 739 (1987); he or she just may not pursue both remedies simultaneously. *Goodyear Tire & Rubber Co. v. H. K. Porter Company*, 521 F.2d 699, 700 (6th Cir. 1975), *cited with approval in Murphy*, 103 Nev. at 186, 734 P.2d at 739. If anything, comity and efficiency make a "motion in the court that rendered the judgment" the preferred and "normal procedure to attack a judgment" for fraud on the court. Wright, Miller & Kane *supra*, § 2868 (noting that "[d]enial of relief [by motion] in th[e rendering] court will bar an independent equitable action in another court, unless the denial was on a ground that precluded reaching the merits of the motion, or the circumstances have changed" (footnotes omitted)). *See also United States v. Beggerly*, 524 U.S. 38, 47 (1998) (interpreting Fed. R. Civ. P. 60(b) and holding that "under the Rule, an independent action should be available only to prevent a grave miscarriage of justice," which is a "demanding standard").

*Lawyer fraud may constitute a "fraud upon the court" pursuant to NRCP 60(b)'s savings clause*

The question thus comes down to whether lawyer fraud in connection with a stipulated final judgment can qualify as a "fraud upon the court" under NRCP 60(b)'s savings clause. The district court found that Davidson committed a "fraud upon the court" when he signed and submitted a stipulated judgment for dismissal with prejudice to the court, which the court then signed and entered, terminating the Garners' claims.

"Fraud upon the court" has been recognized for centuries as a basis for setting aside a final judgment, sometimes even years after it was entered. *Hazel-Atlas Co. v. Hartford Co.*, 322 U.S. 238, 245 (1944) (discussing "the historic power of equity to set aside fraudulently begotten judgments" and canvassing cases and treatises and vacating a judgment entered nine years earlier), *overruled on other grounds by Standard Oil Co. of Cal. v. United States*, 429 U.S. 17, 18 (1976). It is, of course, true that "in most instances society is best served by putting an end to litigation after a case has been tried and judgment entered." *Id.* at 244. For this reason, a final judgment, once entered, normally is not subject to challenge. However, the policy of repose yields when "the court finds after a proper hearing that fraud has been practiced upon it, or the very temple of justice has been defiled." *Universal Oil Co. v. Root Rfg. Co.*, 328 U.S. 575, 580 (1946). "[A] case of fraud upon the court [calls] into question the very legitimacy of the judgment." *Calderon v. Thompson*, 523 U.S. 538, 557 (1998). Put another way, "[w]hen a judgment is shown to have been procured" by fraud upon the court, "no worthwhile interest is served in protecting the judgment." Restatement (Second) of Judgments § 70 cmt. b (1982).

The problem lies in defining what constitutes "fraud upon the court." Obviously, it cannot mean any conduct of a party or lawyer of which the court disapproves; among other evils, such a formulation "would render meaningless the [time] limitation on motions under [Rule] 60(b)(3)." *Kupferman v. Consolidated Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972) (Friendly, J.), *cited with approval in Occhiuto*, 97 Nev. at 146 n.2, 625 P.2d at 570 n.2, *and Murphy*, 103 Nev. at 186, 734 P.2d at 739. The most widely accepted definition, which we adopt, holds that the concept

> embrace[s] only that species of fraud which does, or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases . . . and relief should be denied in the absence of such conduct.

*Demjanjuk v. Petrovsky*, 10 F.3d 338, 352 (6th Cir. 1994) (citing 7 Moore's *Federal Practice* § 60.33 (2d ed. 1978) (now at 12 Moore's *Federal Practice* § 60.21[4][a] (3d ed. 2009))); *Kupferman*, 459 F.2d at 1078 (noting the Second Circuit adopted Moore's formulation); *In re Intermagnetics America, Inc.*, 926 F.2d 912, 916 (9th Cir. 1991) (also adopting Moore's formulation); *see Occhiuto*, 97 Nev. at 146 n.2, 625 P.2d at 570 n.2 (citing this section of Moore's but without referring to the passage quoted in *Demjanjuk*).

An attorney is an officer of the court. "Where a judgment is obtained by fraud perpetrated by an attorney acting as an officer of the court, the judgment may be attacked for fraud on the court." *In re Tri-Cran, Inc.*, 98 B.R. 609, 616 (Bankr. D. Mass. 1989). The Supreme Court has long recognized the damage that lawyer dishonesty can inflict on courts and litigants:

> [W]here an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side,—these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing.

*United States v. Throckmorton*, 98 U.S. 61, 66 (1878). *See Savage v. Salzmann*, 88 Nev. 193, 195, 495 P.2d 367, 368 (1972) (citing *Throckmorton* and noting that fraud on the court involves situations

where, as a result of the fraud, a "party is kept away from the court by . . . such conduct as prevents a real trial upon the issues involved").

In addition to his duties to his clients, a lawyer also owes a duty of "loyalty to the court, as an officer thereof, [that] demands integrity and honest dealing with the court. And when he departs from that standard in the conduct of a case he perpetrates fraud upon the court." *Demjanjuk*, 10 F.3d at 352 (citing 7 Moore's Federal Practice, *supra*, § 60.33 (now at 12 Moore's *Federal Practice*, § 60.21[4][a])); *see* Restatement (Second) of Judgments § 70(1)(a) (stating the general rule that "a judgment in a contested action may be avoided if the judgment . . . [r]esulted from corruption of . . . the attorney for the party against whom the judgment was rendered"). Although not present in all fraud on the court cases, attorney involvement in the fraud is a signal characteristic of many. *Demjanjuk*, 10 F.3d at 352 (noting that "[c]ases dealing with fraud on the court often turn on whether the improper actions are those of parties alone, or if the attorneys in the case are involved"); *Eastern Financing Corp. v. JSC Alchevsk Iron*, 258 F.R.D. 76, 85 (S.D.N.Y. 2008) (analyzing *Hazel-Atlas*, *Kupferman*, and *H. K. Porter Co.* in these terms).

In this case, Davidson obtained Valley Hospital's lawyer's signature on the stipulated judgment and presented it to the district judge, who signed and entered it as the final judgment in the case, forever concluding the Garner family's wrongful death claims. In so doing, Davidson acted as an officer of the court and misrepresented a fraudulent settlement to the district court judge as genuine. Other courts, confronted with like facts, have found fraud on the court, egregious enough to justify vacating the judgment and allowing the claims to proceed. *Southerland v. Irons*, 628 F.2d 978, 980 (6th Cir. 1980), *aff'g*, *Southerland v. County of Oakland*, 77 F.R.D. 727 (E.D. Mich. 1978) (upholding order vacating stipulated judgment for fraud on the court, where the plaintiff's lawyer fraudulently misrepresented the status of his fee and responsibility for liens); *Huffman v. Delacruz*, 719 So. 2d 385, 385-86 (Fla. Dist. Ct. App. 1998) (upholding order vacating a stipulated dismissal for fraud on the court where the plaintiff's attorney signed the settlement stipulations without his client's permission and forged his client's signature on the settlement check, reprinting the passage from *United States v. Throckmorton*, 98 U.S. at 65-66, as the basis for its holding); *Flowers v. Rigdon*, 655 N.E.2d 235, 236 (Ohio Ct. App. 1995) (upholding order vacating a stipulated judgment on the basis the plaintiff automobile accident victims' attorney perpetrated a "fraud on the court" by falsely informing defendants that he had au-

thority to settle, by forging plaintiffs' signature on the entry of dismissal, release, and settlement check, and by keeping settlement proceeds for himself); *see McKinney v. Boyle*, 404 F.2d 632, 634 (9th Cir. 1968) (reversing for evidentiary hearing in case alleging fraud by the plaintiff's attorney in cahoots with the plaintiff's wife to settle his case and keep the money while the plaintiff was in prison; decided under the "catchall" clause in Fed. R. Civ. P. 60(b)(6) (which Nevada has not adopted, so "fraud on the court" not expressly addressed)); *General Med. P.C. v. Horizon/CMS Health Care Corp.*, No. 96-72624, 2009 WL 1447346, at *5 (E.D. Mich. May 21, 2009) (vacating a stipulated judgment under new Fed. R. Civ. P. 60(d)(3) for fraud on the court where "the failure to disclose material facts resulted in [the] court placing its imprimatur on a consent judgment, the primary purpose of which was to ambush a non-party").

*The lawyer's authority as agent did not extend to Davidson's fraud*

We recognize the substantial countervailing argument that a client who hires a lawyer establishes an agency relationship and that, ordinarily, the sins of an agent are visited upon his principal, not the innocent third party with whom the dishonest agent dealt. *Rothman v. Fillette*, 469 A.2d 543, 545 (Pa. 1983); *Flowers v. Rigdon*, 655 N.E.2d at 237-38 (Jones, P.J., dissenting). However, courts "do not treat the attorney-client relationship as they do other agent-principal relationships . . . when the question is whether a settlement agreed to by the attorney binds the client." Grace M. Giesel, *Client Responsibility for Lawyer Conduct: Examining the Agency Nature of the Lawyer-Client Relationship*, 86 Neb. L. Rev. 346, 348 (2007). While a lawyer has apparent authority to handle procedural matters for a client, "[m]erely retaining a lawyer does not create apparent authority in the lawyer" to settle his client's case. Restatement (Third) of the Law Governing Lawyers § 27 cmt. d (2000); *see id.* § 22(1). In *Passarelli v. J-Mar Development*, 102 Nev. 283, 720 P.2d 1221 (1986), we held that a lawyer's professional and psychiatric disintegration due to substance abuse justified an order vacating the final judgment against his client after the lawyer failed to appear for trial. If a lawyer's addictive disorder can justify vacating a judgment against his neglected client, notwithstanding the imposition on his adversary, a lawyer's criminal conduct should permit a claim to relief from judgment by a victimized client as well.

Valley Hospital makes much of the fact that the Garners' retainer agreement included a paragraph entitled "power of attorney" that gave Davidson the power to sign releases "for and on behalf of the client." This argument is a nonstarter, however, because Davidson

did not use the power of attorney to carry out his fraud. Davidson forged each of the Garner family member's signatures in original ink on the release, even going so far as to steal a notary stamp from a neighboring office and forging the notary's signature on the release. Furthermore, the retainer agreement containing the power of attorney provided, "settlement of the claim will not be made without client's consent." Based on these facts and the testimony it heard from the Garner family members, the district court expressly found that Davidson accomplished his fraud without the express, implied, or apparent authority of his clients. This finding is supported by substantial evidence, which we may not disregard. *See* NRCP 52(a) (providing that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses").[4]

## *The district court proceeded properly*

A party seeking to vacate a final judgment based on fraud upon the court bears a heavy burden. It is only after "a proper hearing," *Universal Oil Co.*, 328 U.S. at 580, in which the fraud has been established by "clear and convincing evidence," *Occhiuto*, 97 Nev. at 146 n.2, 625 P.2d at 570 n.2, that relief can be granted. Even then, the motion "is addressed to the sound discretion of the trial court." *Id.*

The district judge in this case conducted an evidentiary hearing and entered specific and adequate findings of fact and conclusions of

---

[4]Davidson was disbarred and criminally prosecuted. He victimized other clients in addition to the Garners, including David Siegenthaler and Tonya LaBeaux. Another district court judge granted Mr. Siegenthaler relief from the judgment in that case. In an unpublished order, a panel of this court affirmed the order of yet a third district court judge declining to vacate a settlement Davidson entered, which Valley Hospital cites (despite SCR 123) as a basis for reversal in this case. *LaBeaux v. Devia*, Docket No. 44795 (Order of Affirmance, July 6, 2006). Although the distinctions are not entirely satisfactory, *LaBeaux* differs from this case in two important respects: (1) Davidson used the form of power of attorney to sign his name in a representative capacity on LaBeaux's release, which led the district judge in *LaBeaux* to find apparent authority supported the settlement; and (2) this court reviews a district court's determination in this setting for abuse of discretion, *Occhiuto*, 97 Nev. at 146 n.2, 625 P.2d at 570 n.2, meaning the question on appeal is not how this court would have ruled as an original matter on the facts presented, but whether the district court abused its discretion in ruling as it did. While "this discretion is a legal discretion" and cannot justify a legally impermissible result, *Cook v. Cook*, 112 Nev. 179, 181-82, 912 P.2d 264, 265 (1996), holding that facts permit an order vacating a stipulated judgment does not mandate vacatur. *Cf. Shammas v. Shammas*, 88 A.2d 204, 210-11 (N.J. 1952) (Brennan, J.).

law. He viewed this as "a terrible case . . . one of the worst cases I have seen in my . . . years on the bench." He knew Davidson as "a talented lawyer, talented practitioner, talented trial lawyer," who "had tr[ied] a jury trial or two here." In his view, "everybody—was—bamboozled, including the court, by Mr. Davidson." Recognizing the concern with two innocent victims, one of whom hired the dishonest agent, the court fashioned a remedy that credited Valley Hospital with the $160,000 Davidson stole against any eventual recovery by the Garners. But the district court stopped there, declining to penalize the Garners with the loss of the right to adjudicate their claim for their father's alleged wrongful death by reason of their lawyer's fraud:

> [W]e lawyers, judges, and practitioners alike are very . . . concerned about how our profession is perceived. We're very proud of what we believe is an honorable profession and—we're very concerned when something like this happens. It hurts us all. It really does.

The district judge's finding that the court, equally with the Garners, the Hospital, and the Hospital's lawyer, was defrauded by Davidson, and its conclusion that this fraud was intolerable and justified vacating the stipulated judgment the court had signed, were well within its discretionary authority to decide.

*Ratification and laches*

Two additional points bear discussion. First, citing *Navrides v. Zurich Insurance Company*, 488 P.2d 637, 640 (Cal. 1971), Valley Hospital urges us to find the Garners ratified the fraud by attempting to negotiate for a settlement involving new funds of an equal amount after the fraud came to light, effectively doubling Valley Hospital's outlay but concluding their claims for the $160,000 Davidson disappeared with. While a client can ratify a lawyer's unauthorized act, *see* Restatement (Third) of the Law Governing Lawyers § 26(3), the district court found the facts did not support ratification here. Unlike the defrauded client in *Navrides*, who sued to enforce the unauthorized settlement, *Navrides*, 488 P.2d at 640, the Garners consistently protested it as fraudulent. The district court's finding of no ratification was not clearly erroneous.

Second, and of greater concern, the Garners learned of Davidson's misconduct from the State Bar of Nevada within weeks of the court entering the stipulation and order of dismissal, yet they waited almost 18 months before filing their NRCP 60(b) motion. During

this time, they cooperated with the federal government in its criminal prosecution of Davidson and with the State Bar in its disbarment proceeding against him, and submitted a claim to the Nevada State Bar's Client Security Fund, for which they received $6,834.56.

Federal authority holds that ''[t]here is no time limit on setting aside a judgment on th[e basis of fraud on the court], nor can laches bar consideration of the matter.'' 11 Wright, Miller & Kane *supra*, § 2870 (footnotes omitted). Other authority suggests ''due diligence'' is required, at least in discovering the underlying facts. Restatement (Second) of Judgments § 70(2)(a) (1982). *See also Matter of Harrison Living Trust*, 121 Nev. 217, 112 P.3d 1058 (2005) (applying equitable estoppel and due diligence principles to bar a motion to vacate a motion to set aside a void judgment under NRCP 60(b)(4)); *Manville v. Manville*, 79 Nev. 487, 387 P.2d 661 (1963) (declining to address laches but holding that an independent suit to vacate a divorce decree was barred by the statute of limitations where the plaintiff waited more than six years to sue her ex-husband, alleging fraud upon the court in presenting the plaintiff's identical twin sister to testify in the underlying divorce). Our Nevada cases have held that a party who seeks relief from a judgment based on fraud upon the court is not subject to NRCP 60(b)'s six-month limitation period and that there is ''no time limitation.'' *Price v. Dunn*, 106 Nev. 100, 104, 787 P.2d 785, 787 (1990) (allowing motion even though 19 months had passed between entry of judgment and application to vacate); *see Murphy*, 103 Nev. at 185-86, 734 P.2d at 739 (allowing application ''[n]early a year'' after judgment was entered); *Savage v. Salzmann*, 88 Nev. 193, 495 P.2d 367 (1972) (remanding order dismissing independent action to vacate judgment filed 16 months after judgment was entered).

This case does not require us to decide how far concern for the integrity of the court in a case involving fraud on the court will take a party who delays seeking relief. Davidson did not settle this case until discovery was well underway, and the record on appeal shows that, despite the district court's affording the parties the opportunity to brief, argue, and present live evidence on the Garners' NRCP 60(b) motion, Valley Hospital made no argument or showing that specific testimony or evidence had been lost or that it did not learn of Davidson's fraud at or about the same time the Garners did. While Valley Hospital did argue that the Garners were subject to the six-month limitation applicable to NRCP 60(b)(3) motions, it did not assert laches or establish prejudice. Indeed, among the arguments it tendered to the district court was that until Davidson's criminal proceedings ran their course, it was premature for the court to proceed with the Garners' NRCP 60(b) motion, because restitution

might be ordered at Davidson's sentencing. Under these circumstances, the district court did not err in failing to deny the Garners relief based on the 18 months that elapsed between entry of the judgment and the NRCP 60(b) motion.

Accordingly, we affirm the order of the district court.

HARDESTY, C.J., PARRAGUIRRE, DOUGLAS, CHERRY, SAITTA, and GIBBONS, JJ., concur.