132 Nev., Advance Opinion 71

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| DAWNETTE R. DAVIDSON,<br>Appellant,<br>vs.<br>CHRISTOPHER B. DAVIDSON,<br>Respondent. | No. 67698<br><br>**FILED**<br><br>SEP 2 9 2016<br><br>TRACIE K. LINDEMAN<br>CLERK OF SUPREME COURT<br>BY<br>CHIEF DEPUTY CLERK |

Appeal from a district court order denying a post-decree motion to enforce a provision of a divorce decree. Eighth Judicial District Court, Family Court Division, Clark County; Vincent Ochoa, Judge.

*Affirmed.*

Mills, Mills & Anderson and Gregory S. Mills and Daniel W. Anderson, Las Vegas,
for Appellant.

Hofland & Tomsheck and Bradley J. Hofland, Las Vegas,
for Respondent.

BEFORE THE COURT EN BANC.[1]

*OPINION*

By the Court, CHERRY, J.:

Nevada's statute of limitations for actions on judgments, NRS 11.190(1)(a), provides that an action to enforce the provisions of a judgment or decree from any state or federal court be commenced within six years. NRS 11.200 dictates that the limitations period commences

_____

[1]The Honorable Nancy M. Saitta, Justice, having retired, this matter was decided by a six-justice court.

"from the last transaction or the last item charged or last credit given." In the underlying district court action, appellant Dawnette Davidson moved the family division of the district court to enforce a term of the parties' decree of divorce, which required her ex-husband, respondent Christopher Davidson, to pay Dawnette one-half of the equity in the marital home according to a 2006 appraisal in exchange for Dawnette quitclaiming the residence to Christopher. Dawnette commenced this action more than six years after she delivered the quitclaim deed. According to Dawnette, her motion was timely because NRS 125.240 allows the family division of the district court to enforce its decrees without time limitations. She also asserts that her motion was timely because the parties resided together in the marital home until 2011 and it was unreasonable for her to pursue payment from Christopher while she enjoyed the benefits of the residence.

We conclude that the Nevada Legislature did not grant the family divisions of the district courts the authority to endlessly enforce divorce decrees except where the Legislature specifically provided for enforcement regardless of the age of the claim, *see, e.g.,* NRS 125B.050 (allowing enforcement of a child support order without a time limitation for commencing the action). We also conclude that the accrual time for the limitations period in an action on a divorce decree commences "from the last transaction or the last item charged or last credit given." *See* NRS 11.200. Here, the last transaction occurred in 2006, when Dawnette delivered the quitclaim deed to Christopher. As Dawnette delivered the quitclaim deed more than six years before she moved the family division of the district court to enforce the decree, her claim is time-barred.

## FACTS

The district court granted Christopher and Dawnette a decree of divorce in 2006. Their decree required Dawnette to execute a quitclaim

deed and release all of her rights in the marital residence. In exchange, the decree required Christopher to pay one-half of the equity in the residence, according to the appraised value in 2006, to Dawnette. Approximately two weeks after the parties divorced, they reconciled and cohabitated in the marital residence until 2011. They never remarried. The parties agree that Dawnette executed the quitclaim deed, and Christopher claims that he refinanced the property and paid half of the equity to Dawnette. However, Dawnette denies that Christopher ever made payment.

In 2014, Dawnette filed a motion to enforce the decree, claiming that she never received her half of the equity in the property. Christopher opposed the motion, arguing that he had previously paid Dawnette her half of the equity. He also argued that the statute of limitations barred Dawnette's claim. In response, Dawnette argued that the statute of limitations had not yet begun to run because the decree did not provide a date by which Christopher was required to tender payment to her. Without deciding whether Christopher paid Dawnette, the district court denied Dawnette's motion. The court concluded that an action to enforce a decree of divorce must be commenced within six years pursuant to NRS 11.190(1)(a) and that Dawnette's claim was therefore untimely.

On appeal, Dawnette argues that (1) the district court erred when it ruled that NRS 11.190(1)(a) barred her action to enforce the decree because NRS 125.240, not NRS 11.190(1)(a), applies to motions to enforce a decree of divorce; and (2) even if NRS 11.190(1)(a) does apply, the statute of limitations had not expired because accrual of the statute of limitations does not begin until demand for performance is made or a reasonable amount of time has passed. Christopher argues that the

district court's order denying her motion is not appealable and that the district court correctly ruled that the statute of limitations for Dawnette's claim had passed.

## DISCUSSION

*Whether this court has jurisdiction to consider Dawnette's appeal*

In his answering brief, Christopher argues that no statute or court rule allows this court to review an order denying a motion for enforcement of a judgment. He asserts that although NRAP 3A(b)(8) allows an appeal from an order after final judgment, the order, to be reviewable, must impact a party's rights based on a previous judgment. He asserts that the order at issue *interprets* the parties' previous decree, but the order does not *amend* the decree or *alter* the parties' rights under it. In her reply, Dawnette argues that the district court's order denying her motion is appealable pursuant to NRAP 3A(b)(8) because it impacts her right to one-half of the equity in the marital residence, as set forth in the decree of divorce. We agree with Dawnette.

NRAP 3A(b)(8) allows an appeal from any "special order entered after final judgment." In *Gumm v. Mainor*, 118 Nev. 912, 914, 59 P.3d 1220, 1221 (2002), this court held that, "to be appealable . . . , a special order made after final judgment must be an order affecting the rights of some party to the action, growing out of the judgment previously entered."

In the instant case, Dawnette appeals from the district court's decision and order, which denied her motion to enforce the parties' decree of divorce. The decree of divorce was the final judgment. It adjudicated all of the parties' rights regarding child custody and support, spousal support, and the division of property. *See Gumm*, 118 Nev. at 916, 59 P.3d at 1223. In her motion, Dawnette sought to enforce her right to receive

half of the equity in the marital residence, according to the 2006 appraisal value. Her right to receive these funds was established by the decree. Accordingly, the order from which Dawnette appeals is a "special order entered after final judgment," *see* NRAP 3A(b)(8), because the order denied her claim for one-half of the equity in the property and thus affects Dawnette's rights "growing out of the judgment previously entered," *see Gumm*, 118 Nev. at 914, 59 P.3d at 1221. Therefore, this court has jurisdiction to consider the instant appeal.

*Whether the family division of the district court may enforce its decrees without time limitations*

Notwithstanding NRS 11.190(1)(a), Dawnette argues that NRS 125.240 gives the district court plenary power to enforce a decree of divorce any time after it is entered. She claims that because NRS 11.190(1)(a) and NRS 125.240 conflict with each other, this court must give NRS 125.240 priority over NRS 11.190(1)(a). Christopher asserts that all courts have continuing jurisdiction to enforce their decrees. But, he maintains, continuing jurisdiction does not nullify the statute of limitations and grant a court perpetual authority. We agree with Christopher.

We review questions of statutory construction de novo. *I. Cox Constr. Co. v. CH2 Invs., LLC*, 129 Nev. 139, 142, 296 P.3d 1202, 1203 (2013). This court's goal in construing statutes is to uphold the intent of the Legislature and harmonize the statutes, if possible.

> Our task is to ascertain the intent of those who enacted the provisions at issue, and to adopt an interpretation that best captures their objective. We must give words their plain meaning unless doing so would violate the spirit of the provision. Whenever possible, we construe provisions so that they are in harmony with each other. Specific

provisions take precedence over general provisions.

*Guinn v. Legislature of State of Nev.*, 119 Nev. 277, 285, 71 P.3d 1269, 1274-75 (2003), *overruled on other grounds by Nevadans for Nev. v. Beers*, 122 Nev. 930, 142 P.3d 339 (2006).

Dawnette's argument that NRS 125.240 allows the family division of the district court to enforce its decrees and judgments without any time limitations is unavailing. NRS 125.240 applies to actions for separate maintenance. However, the parties' action in this case was one for divorce, *see* NRS 125.010 to 125.185, not separate maintenance, *see* NRS 125.190 to 125.280. NRS 125.250 states that "[i]n all cases commenced under NRS 125.190 to 125.280, inclusive, the proceedings and practice must be the same, as nearly as may be, as those provided in actions for divorce." Although the proceedings in a separate maintenance case must mirror divorce proceedings as much as possible, this court has never held that the reverse is also true, and we decline to do so today. Accordingly, even if NRS 125.240 allowed the family division to enforce its orders in separate maintenance actions without any time limitations, the statute does not apply to the instant matter, which concerns a decree of divorce.

Additionally, if the Nevada Legislature intended to eliminate the statute of limitations for enforcement of all family division orders, it would have specifically given the district courts such authority. This is evidenced by another statute applying to the enforcement of family division orders. In NRS 125B.050, the Legislature specifically invested the district courts with the authority to enforce child support orders regardless of the age of the claim:

3. If a court has issued an order for the support of a child, *there is no limitation on the time* in which an action may be commenced to:

(a) Collect arrearages in the amount of that support; or

(b) Seek reimbursement of money paid as public assistance for that child.

(Emphasis added.) The Legislature has not provided such authority for family division orders that divide the parties' joint property. Therefore, we conclude that, other than child support orders, Nevada law does not exclude the family division from the limitations period in NRS 11.190(1)(a).

Similarly, in 2015, the Nevada Legislature amended NRS 125.150(3) to provide a limitations period for postjudgment motions to adjudicate omitted assets in divorce, annulment, or separate maintenance cases. The current statute mandates that the aggrieved party must file such a motion within three years of the discovery "of the facts constituting fraud or mistake." NRS 125.150(3). The same statute provides the family division with "continuing jurisdiction to hear such a motion." *Id.* Thus, we conclude that the Legislature does not equate "continuous jurisdiction" with unending jurisdiction, as the three-year limitations period for postjudgment motions to adjudicate omitted assets demonstrates.

Dawnette further claims that the Legislature did not intend for a divorce litigant to receive a windfall for the full value of a marital property by waiting for the six-year limitations period to end and then selling the property and retaining the full value of the proceeds. While Dawnette's argument has merit, we believe that the Legislature also did not intend for parties to endlessly "sit" on potential claims. *See Doan v. Wilkerson*, 130 Nev., Adv. Op. 48, 327 P.3d 498, 501 (2014) ("The policy in

SUPREME COURT
OF
NEVADA

(O) 1947A

7

favor of finality and certainty . . . applies equally, and some might say especially, to a divorce proceeding."). The Legislature provided NRS 17.214, which Dawnette could have used to prevent Christopher from allegedly receiving a double windfall. NRS 17.214 allows a judgment creditor to renew a judgment and avoid the harsh results that could accompany the expiration of a statute of limitations. Unfortunately, Dawnette failed to avail herself of the statute's protections. Moreover, as we have previously reasoned, "[i]f the legislature had intended to vest the courts with continuing jurisdiction over property rights [in divorce cases], it would have done so expressly." *Id.* (quoting *Kramer v. Kramer*, 96 Nev. 759, 762, 616 P.2d 395, 397 (1980) (alteration in original)).

In *Bongiovi v. Bongiovi*, 94 Nev. 321, 322, 579 P.2d 1246, 1246-47 (1978), this court determined that NRS 11.190 barred a party's recovery of alimony payments that were more than six years old. There, the parties' divorce decree ordered the ex-husband to make ten monthly alimony payments of $1,000 to his ex-wife. *Id.* at 322, 579 P.2d 1246. The first payment was due on July 1, 1971, but the ex-wife never received any payments. *Id.* On November 29, 1977, the ex-wife filed a motion seeking a judgment on the arrearages, and the district court subsequently entered a judgment in the amount of $5,000 on the ex-wife's behalf. *Id.* at 322, 579 P.2d at 1247. The lower court said that recovery of the first five payments was barred by the six-year limitation in NRS 11.190. *Id.* This court agreed that NRS 11.190 applied to the former wife's motion and held that "[t]he six-year period prescribed by that statute commenced to run against each installment as it became due." *Id.* We see no reason to deviate from our prior holding and conclude that a claim to enforce a divorce decree,

whether through motion practice or through an independent action, is governed by the limitations period under NRS 11.190 and NRS 11.200.[2]

Lastly, our holding is consistent with several other states that apply limitations periods to enforcement of property distribution provisions in divorce decrees.[3] Thus, we conclude that no basis exists for us to create a new rule that excuses property distribution provisions in divorce decrees from NRS 11.190(1)(a) and that the six-year statute of limitations in NRS 11.190(1)(a) applies to the instant case.

*Whether the statute of limitations has expired for Dawnette's action*

Dawnette asserts that even if NRS 11.190(1)(a) does apply, the district court should have concluded that the statute did not begin to run until after the parties' post-decree separation in 2011. She contends that because the decree did not contain a deadline by which Christopher was to

---

[2]We do not distinguish between a motion and an independent action to enforce a divorce decree because "[a] party is not bound by the label he puts on his papers." *NC-DSH, Inc. v. Garner*, 125 Nev. 647, 652, 218 P.3d 853, 857 (2009) (internal citations and quotation marks omitted). "A motion may be treated as an independent action or vice versa as is appropriate." *Id.*

[3]*See, e.g., Cedergreen v. Cedergreen*, 811 P.2d 784, 786 (Alaska 1991) (limiting actions upon divorce decrees to ten years); *Mark v. Safren*, 38 Cal. Rptr. 500, 503-04 (Dist. Ct. App. 1964) (imposing a ten-year statute of limitations upon a divorce decree); *O'Hearn v. O'Hearn*, 638 A.2d 1192, 1195 (Md. Ct. Spec. App. 1994) (restricting litigation upon a divorce decree to a 12-year statute of limitations); *Tauber v. Lebow*, 483 N.E.2d 1140, 1142 (N.Y. 1985) (placing a six-year statute of limitations on claims from divorce decrees); *Wichman v. Shabino*, 851 N.W.2d 202, 205 (S.D. 2014) (recognizing a limitations period of 20 years to enforce a divorce decree); *Abrams v. Salinas*, 467 S.W.3d 606, 611 (Tex. App. 2015) (subjecting a case upon a decree of divorce to a ten-year limitations statute); *Kessimakis v. Kessimakis*, 977 P.2d 1226, 1229 (Utah Ct. App. 1999) (constraining a suit on a divorce decree to an eight-year statute of limitations).



tender her interest in the marital property, the time for Christopher's performance was within a reasonable time after the parties' final separation. Dawnette contends that because she was still living in the marital residence and enjoying the benefits of the property, she did not need to seek enforcement of her interest. Christopher charges that even without an express deadline, NRS 11.200 sets when the time begins to run. He explains that the time began to run in 2007, when he refinanced the marital residence because that was when the last undertaking on the property occurred. We conclude that the statute of limitations expired six years after Dawnette delivered the quitclaim deed to Christopher.

> NRS 11.200 states as follows:
>
> The time in NRS 11.190 shall be deemed to date from the last transaction or the last item charged or last credit given; and whenever any payment on principal or interest has been or shall be made upon an existing contract, whether it be a bill of exchange, promissory note or other evidence of indebtedness if such payment be made after the same shall have become due, the limitation shall commence from the time the last payment was made.

According to NRS 11.200, the statute of limitations began running when there was "evidence of indebtedness" for half of the equity in the marital property to Dawnette. NRS 11.200 comports with our holding in *Borden v. Clow*, 21 Nev. 275, 278, 30 P. 821, 822 (1892).[4] There, we explained that the running of the statute of limitations begins when a deed is delivered. This court was asked to determine when the statute of limitations began

---

[4]Although the *Borden* case is over 100 years old, we have never overruled its holding, nor do we find cause to do so now.

 

to run in a case where the defendant gave the plaintiff an absolute deed to real property in order to secure a debt. *Id.* at 276, 30 P. at 821. The parties neglected to set a date upon which the payment would be due and disputed whether the plaintiff's cause of action was barred by the statute of limitations for contracts. *Id.* at 276-77, 30 P. at 821. We concluded that the delivery of the deed triggered the statute of limitations:

> It is a rule in regard to the statute of limitations, *applicable in all cases*, that the statute begins to run when the debt is due, and an action can be instituted upon it. There was no agreement between the parties as to when this indebtedness should be paid; therefore the statute began to run immediately upon the delivery of the deed to the defendant.

*Id.* at 278, 30 P. at 822 (emphasis added). Thus, evidence of indebtedness occurred with the delivery of the deed. Here, the latest time at which the debt was due, pursuant to *Borden*, was after Dawnette delivered the quitclaim deed to Christopher in 2006. As a result, the statute of limitations for Dawnette's claim has expired. *See* NRS 11.190(1)(a).

Instead of looking to NRS 11.200 and *Borden*, Dawnette relies upon our holding in *Mayfield v. Koroghli*, 124 Nev. 343, 349, 184 P.3d 362, 366 (2008). She asserts that it was not reasonable for her to pursue her half of the equity in the marital residence while she was still living there—up until 2011. In *Mayfield*, we held that

> a fundamental principle of contract law is that the time for performance under a contract is not considered of the essence unless the contract expressly so provides or the circumstances of the contract so imply. If time is not of the essence, the parties generally must perform under the contract within a reasonable time, which depends upon the nature of the contract and the particular circumstances involved.

Supreme Court
OF
Nevada

(O) 1947A

124 Nev. at 349, 184 P.3d at 366 (footnotes and quotations omitted). Even if the decree of divorce were a simple contract, Dawnette does not explain why a "reasonable time," *see id.*, to demand performance under the decree of divorce was after the parties separated in 2011, instead of when she delivered the deed in 2006. We conclude that Dawnette's claim—that it was not reasonable to demand performance while she enjoyed the benefits of the marital residence—is unpersuasive. Dawnette apparently believed that her delivery of the deed was reasonable and Christopher's refinancing of the property was reasonable. Therefore, demanding payment, despite living in the marital residence, was likewise reasonable. Moreover, the consideration for receiving half of the equity was Dawnette's deliverance of the deed so that Christopher could title the house in his name alone. The decree does not indicate that she was to vacate the residence in consideration for half of the equity. Consequently, Christopher became indebted to Dawnette when she delivered the deed to him, not when she vacated the residence in 2011.

Thus, we conclude that NRS 11.200 and our holding in *Borden* apply here and the statute of limitations began running after Dawnette delivered the quitclaim deed to Christopher in 2006. Because the statute of limitations expired in 2012, Dawnette's motion is time-barred pursuant to NRS 11.190(1)(a).

## CONCLUSION

We hold that the six-year statute of limitations in NRS 11.190(1)(a) applies to claims for enforcement of a property distribution provision in a divorce decree entered in the family divisions of the district courts. Like any other claim "upon a judgment or decree of any court of the United States, or of [any court of] any state or territory within the United States," *see* NRS 11.190(1)(a), actions to enforce the provisions of a

 

divorce decree must be initiated within six years. We further hold that when a litigant seeks to enforce a provision in a decree awarding him or her half of the equity in marital property, the statute of limitations begins to accrue when there is evidence of indebtedness, which occurred in this case when Dawnette delivered the quitclaim deed to Christopher. Accordingly, we affirm the decision of the district court.

_____, J.
Cherry

We concur:

_____, C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A