**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. NV-17-1304-TaBKu |
| PAUL A. MORABITO, | Bk. No. 3:13-bk-51237-GWZ |
| Debtor. | Adv. No. 3:16-ap-05043-GWZ |
| PAUL A. MORABITO; CONSOLIDATED NEVADA CORPORATION, | |
| Appellants, | MEMORANDUM* |
| v. | |
| JH, INC.; JERRY HERBST; BERRY-HINCKLEY INDUSTRIES; WILLIAM A. LEONARD, JR., Chapter 7 Trustee, | |
| Appellees. | |

Argued and Submitted on September 27, 2018
at Reno, NV

Filed – October 30, 2018

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Gregg W. Zive, Bankruptcy Judge, Presiding

———

Appearances:      David Shemano of ShemanoLaw argued for appellants;
Gerald M. Gordon of Garman Turner Gordon LLP argued
for appellees JH, Inc., Jerry Herbst, and Berry-Hinckley
Industries; John Francis Murtha of Woodburn & Wedge
argued for appellee William A. Leonard, Jr., Chapter 7
Trustee.

———

Before:  TAYLOR, BRAND, and KURTZ, Bankruptcy Judges.


**INTRODUCTION**

Chapter 7 debtors Paul A. Morabito and Consolidated Nevada
Corporation ("CNC") (collectively, the "Morabito Parties") have been
involved in a decades-long dispute with JH, Inc., Jerry Herbst, and Berry-
Hinckley Industries (collectively, the "Herbst Entities") over a stock
acquisition agreement.

The Herbst Entities prevailed in state court and obtained a significant
judgment for fraud. While the judgment was on appeal, the parties entered
into a settlement and, as part of it, vacated the fraud judgment. The
Morabito Parties defaulted on the settlement agreement, and the Herbst

2

Entities filed a stipulated confession of judgment and successfully institutet involuntary bankruptcy proceedings against the Morabito Parties.

The Morabito Parties now claim that the Herbst Entities procured the state court judgment and settlement agreement through fraud. They brought a multi-count action in Nevada state court to vindicate their position. And realizing that at least some of the causes of action belonged to their respective bankruptcy estates, they filed a motion seeking to prosecute the claims on behalf of their estates or to compel chapter 7[1] trustee William A. Leonard, Jr. (the "Trustee") to abandon them. The bankruptcy court denied the motion and determined that all causes of action in the complaint belonged to the bankruptcy estates. We affirmed on appeal.

In the meantime, the Herbst Entities removed the action to the bankruptcy court; the Morabito Parties filed a motion to remand. The bankruptcy court denied that motion and, based on its earlier determination that the Morabito Parties' lacked standing to assert estate claims, authorized the Trustee to file a notice of voluntary dismissal. He did so, and the Morabito Parties appealed.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

We conclude that the bankruptcy court properly determined that the complaint pled only estate claims. As a result, the Morabito Parties lack prudential standing to assert them, and the bankruptcy court properly denied the motion to remand.

Accordingly, we AFFIRM the bankruptcy court's order denying the motion to remand.

## FACTS

This is not the parties' first trip to the BAP. We borrow liberally from our earlier memorandum, *Morabito v. JH Inc. (In re Morabito)*, BAP No. NV-17-1211-FLTi (9th Cir. BAP Dec. 21, 2017).

**Prepetition Events.** In 2007, JH, Inc. agreed to purchase the stock of Berry-Hinckley Industries from P.A. Morabito & Co. Ltd., CNC's predecessor in interest. Mr. Herbst guaranteed JH, Inc.'s obligations, while Mr. Morabito guaranteed those of P.A. Morabito & Co. He also agreed to serve as the construction manager for certain development sites and represented that Berry-Hinckley Industries had $3,100,000 of working capital.

The deal rapidly went south. The Morabito Parties filed suit against the Herbst Entities in Nevada state court, and the Herbst Entities filed counterclaims.

Before trial, the Nevada state court appointed independent accountants to examine the working capital issue. The state court approved

4

and adopted their report, which favored the Herbst Entities. And after a bench trial in May 2010, the state court found that the Morabito Parties breached the stock sale agreement and engaged in fraud in the inducement and misrepresentation; it awarded the Herbst Entities over $149,000,000 in compensatory and punitive damages.

After both parties appealed, they executed a settlement agreement providing for dismissal of the state court action with prejudice and payment to the Herbst Entities of more than $13,000,000 over time. To support this payment obligation, the Morabito Parties agreed to execute a $85,000,000 Confession of Judgment and Stipulation to Confession of Judgment, wherein Mr. Morabito admitted he acted in bad faith and committed fraud. The Morabito Parties agreed that the Herbst Entities could file the Confession of Judgment if the Morabito Parties breached the settlement agreement.

And a breach by the Morabito Parties followed; the Herbst Entities filed the Confession of Judgment in the state court.

**The involuntary chapter 7 petitions and nondischargeability litigation.** The Herbst Entities also filed involuntary chapter 7 petitions against Mr. Morabito and CNC. The bankruptcy court entered orders for relief; we affirmed on appeal.

The Herbst Entities filed a $77,000,000 proof of claim in each debtors' bankruptcy cases. They also obtained partial summary judgment against

Mr. Morabito rendering the claim nondischargeable under § 523(a)(2).

**The Morabito Parties' fraud on the court complaint.** While the bankruptcy cases were pending, the Morabito Parties filed a complaint in Nevada state court (the "Fraud Action") against the Herbst Entities for fraud on the court, fraud, fraudulent inducement, and fraudulent misrepresentation (the "Fraud Claims"). They sought a declaration that the Confession of Judgment was unenforceable because it was procured by fraud and also sought monetary recovery.

The Herbst Entities removed the Fraud Action to the bankruptcy court.

**The Morabito Parties' motion for authority to prosecute claims or to compel abandonment and the resulting appeal.** After removal, the Morabito Parties filed a motion seeking authority for them to file and prosecute the Fraud Claims or, in the alternative, for their abandonment (the "Prosecution Motion").

In the motion, they categorized the Fraud Claims as falling into three categories: first, a declaratory relief claim asserting that the Herbst Entities committed fraud in the state court action and that the Herbst Entities should not benefit from the fraud (the "Declaratory Relief Claim"); second, a claim for damages caused by the fraud; and third, a fraudulent transfer claim seeking to avoid the settlement agreement and Confession of Judgment and to recover the money the Morabito Parties paid under the

6

settlement agreement. They asserted that, although the bankruptcy estates had standing to prosecute the Declaratory Relief claim, they also had independent standing to bring it; they acknowledged that the Trustee had exclusive authority to prosecute the remaining Fraud Claims. Nonetheless, they argued that they should be allowed to prosecute all claims.

The bankruptcy court denied the motion. In its accompanying findings of fact and conclusions of law, the bankruptcy court found that the claims were not colorable. It also concluded that the Trustee had exclusive standing to assert all claims as pled.

The Morabito Parties appealed. We affirmed. The Morabito Parties appealed to the Ninth Circuit.

**The Morabito Parties' motion to remand and its denial.** The month after the Morabito Parties filed their Prosecution Motion, but before it was decided, they also filed a motion requesting remand of the Fraud Action based on 28 U.S.C. § 1452(b). The Herbst Entities and the Trustee opposed.

At a hearing, the bankruptcy judge laid out his thoughts on the case by analyzing the complaint. To start, he observed that the complaint failed to indicate whether it was brought on behalf of the debtors or the estate. He then noted that in the papers there were references to a declaratory relief claim, but he could not find it:

> I have read the complaint. I find four causes of action . . . .
> Fraud on the court, that's number one; second cause of action,
> NRCP 60(b)(3) fraud; third cause of action, fraudulent

7

> inducement; fourth cause of action, fraudulent
> misrepresentation. I do not see a declaratory relief claim for
> relief.

Hr'g Tr. (Aug. 3, 2017) 4:11–18. He acknowledged that the prayer sought a declaration but explained that the prayer was for remedies and not separate claims.

Next, the bankruptcy judge turned to the claim the Morabito Parties wanted to assert (i.e., fraud upon the court). He, first, confirmed with the Morabito Parties that the complaint was based in part on Nevada Rule of Civil Procedure 60(b)(3), which concerns motions for reconsideration based upon fraud. He then read from another part of Nevada Rule of Civil Procedure 60, which states that the "rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding to set aside a judgment for fraud upon the court." *Id.* at 31:13–16. So, the bankruptcy judge explained, he expected that the Morabito Parties would read Nevada Rule of Civil Procedure 60 and then just file their independent action after the adversary proceeding was dismissed.

But the bankruptcy judge acknowledged another possibility: if the complaint included a fraud upon the court independent action, he could sever that claim from the complaint and remand it, and only it, to state court. He concluded that the complaint, however, did not include one—this despite the Morabito Parties' counsel's attempts to convince him otherwise.

8

The bankruptcy judge clearly expressed his intent to not prejudice the Morabito Parties' separate claims,[2] and he also discussed the various remand factors and made findings on each. The bankruptcy judge then ruled from the bench. He concluded:

> I don't think there's any jurisdiction to bring [the complaint]. I think the trustee can dismiss it. He can dismiss it in the bankruptcy. And if I remand, that can't happen. I do not think that in any way is Mr. Morabito precluded by this ruling or candidly, because I made that clear, I thought, in paragraph 111 of my findings, to bring any independent action that he thinks is appropriate . . . .
>
> So I'm denying the motion to remand. I'm lifting the stay regarding the adversary for the purpose of allowing the trustee to dismiss the adversary . . . .
>
> The other reason that I forgot to mention that ties into the motion to remand, I'm not even convinced that the debtors have the standing to bring the motion to remand. It's up to the trustee if it's estate assets. That's another reason not to grant the motion to remand.

*Id.* at 57:23–58:24.

Unsatisfied with the bankruptcy judge's statement, the Morabito

---

[2] Hr'g Tr. at 37:3–7 ("[I]f your concern was that I would preclude Mr. Morabito upon this motion for whatever rights he might have . . . is simply wrong. I don't know that he has any. But it wouldn't be my intent to preclude him from trying to assert them."); *id.* at 51:10–14 ("[T]hat sentence was written carefully not to preclude Mr. Morabito from bringing his own claims. . . . Mr. Morabito can attempt to bring them as an independent action. That's how I thought it would work for Mr. Morabito . . . .").

Parties' counsel sought clarification:

> MR. SHEMANO:       But I just want -- I want there to be a record that this Court's finding today that this existing complaint is all estate claims and is not any personal claims by Mr. Morabito --
>
> THE COURT:          There are no personal claims in that complaint. . . . There is no declaratory relief action.

*Id.* at 60:15–22. At the Morabito Parties' request, the bankruptcy judge agreed that protective language could be included in the order.

**The bankruptcy court's order and the Trustee's Civil Rule 41 voluntary dismissal**. The bankruptcy court then entered an order denying the motion for remand.

The bankruptcy court incorporated the findings of fact and conclusions of law made at the hearing. But it explicitly included "a finding that the Causes of Action set forth in the Complaint in the 2016 State Court Action are property of the estate in the Bankruptcies which only the Trustee had standing to assert . . . ." September 14, 2017 Order Denying Motion for Remand of Removed Proceeding and Vacating Stay at 3. The order further noted that, "[a]s clarified on the record at the hearing, the Court has not made a finding as to whether the Plaintiffs have independent standing apart from the estate to bring claims against the Defendants based upon the allegations of the Complaint . . . ." *Id.* As a result, it stated, "any

10

other claims belonging to the Plaintiffs and not to the bankruptcy estates and not asserted in the Complaint are not before the Court . . . and are not affected by this order." *Id.* at 4.

The order also authorized the Trustee to file a notice of dismissal with prejudice. The Trustee did so.

The Morabito Parties timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334. As we discuss below, we have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Do we have jurisdiction?

Did the bankruptcy court err in concluding that the Morabito Parties lack standing because the Complaint pleads only estate claims?

## STANDARD OF REVIEW

We review our own jurisdiction de novo. *Wilson v. Lynch*, 835 F.3d 1083, 1091 (9th Cir. 2016); *Ellis v. Yu (In re Ellis)*, 523 B.R. 673, 677 (9th Cir. BAP 2014). We review standing de novo. *Paine v. Dickey (In re Paine)*, 250 B.R. 99, 104 (9th Cir. BAP 2000).

## DISCUSSION

This case concerns a complaint containing claims that admittedly belong to the bankruptcy estate. The Morabito Parties argue, unsuccessfully, that it also included their own, separate claims. The

11

Morabito Parties, thus, lack standing to assert estate claims.

## A. We have jurisdiction to hear this appeal.

The Trustee seeks dismissal of the appeal by motion alleging a lack of jurisdiction; he would have us discontinue review before we even consider the Morabito Parties' arguments. We deny the motion.

### 1. We have jurisdiction over the remand order even though the Morabito Parties did not designate it in their notice of appeal.

The Trustee argues that we lack jurisdiction over the order denying remand for two reasons: first, the Morabito Parties did not appeal within 14 days of its entry; and second, they did not designate the Remand Order in their notice of appeal. The Morabito Parties argue that the 14-day appeal deadline did not apply to the order denying remand because it was interlocutory. The Trustee concedes this point in his reply. He instead reiterates that they did not designate the order denying remand in their notice of appeal and asserts that this omission is fatal.

The Trustee is wrong; the Ninth Circuit has squarely rejected this argument:

> Cowboys also argues that because Disabled Rights' notice of appeal mentions only the final judgment of September 27, 2002, Disabled Rights is precluded from appealing the earlier orders dismissing Events and Cowboys. This argument fails. As we explained in *Harvey v. Waldron*, "[a]n appeal from a final judgment draws in question all earlier, non-final orders and rulings which produced the judgment." 210 F.3d 1008, 1012 (9th

12

Cir. 2000) (internal quotation marks and citation omitted). *Cf.* [*Montes v. United States*, 37 F.3d 1347, 1351 (9th Cir. 1994)] (concluding that failure of notice of appeal to specify earlier order did not bar appeal where "the intent to appeal a specific judgment [could] be fairly inferred and the appellee [was] not prejudiced by the mistake") (internal quotations marks and citation omitted).

*Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 872 n.7 (9th Cir. 2004). *Roque v. Yniguez (In re Roque)*, BAP No. EC-13-1048-KiPaJu, 2014 WL 351424, at *5 (9th Cir. BAP Jan. 31, 2014) ("Consequently, the [earlier interlocutory orders] merged into the final MSJ Order. As such, they can be challenged on appeal. This is true even though these orders were not designated in [appellant's] notice of appeal."). As a result, the Morabito Parties' failure to list the remand order in their notice of appeal does not deprive us of jurisdiction over it.

### 2. We have § 158 jurisdiction over the dismissal notice.

The Trustee and Herbst Entities advance two additional jurisdictional arguments. Neither is persuasive.

First, they suggest that a dismissal notice is not an order, judgment, or decree under 28 U.S.C. § 158(a) and (b)(1). We disagree. The Ninth Circuit addressed a similar issue in *Concha v. London*, 62 F.3d 1493 (9th Cir. 1995). There, the Conchas filed a complaint in state court, the defendants removed the action to federal court, and the district court denied the Conchas' motion to remand. *Id.* at 1497. So the Conchas filed a Civil

13

Rule 41(a)(1) notice of dismissal and appealed. *Id.* at 1505. After some discussion, the Ninth Circuit concluded: "We therefore treat the Conchas' [Civil Rule] 41(a)(1) notice as a dismissal with prejudice as to all defendants, and conclude that we have jurisdiction to consider whether the district court properly denied the Conchas' motion to remand." *Id.* at 1509. So the Ninth Circuit has treated a Civil Rule 41(a)(1) voluntary dismissal as appealable even though it is filed as a notice and not as an order, judgment, or decree.

Second, the Trustee and Herbst Entities argue that this particular Civil Rule 41(a)(1) dismissal is not appealable because it was not prejudicial or adverse to the Morabito Parties' interests—the bankruptcy court clarified that the complaint only included the bankruptcy estates' claims. Here, the parties discuss recent caselaw concerning the appealability of voluntary dismissals.

We acknowledge that the relevant caselaw contains nuance and is not easily applied in a bright-line fashion. *See Concha*, 62 F.3d at 1507; *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064 (9th Cir. 2002); *Romoland Sch. Dist. v. Inland Empire Energy Ctr., LLC*, 548 F.3d 738 (9th Cir. 2008). And the Supreme Court recently issued a decision that may undermine settled Ninth Circuit precedent. *Compare Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1706–07 (2017) (concluding that a voluntary dismissal with prejudice of a class action lawsuit did not give rise to an appealable judgment), *with Ward*

14

*v. Apple, Inc.*, 791 F.3d 1041, 1045 (9th Cir. 2015) ("We have repeatedly recognized that voluntary dismissals with prejudice that produce an adverse final judgment may be appealed."). It is unclear if *Microsoft Corporation v. Baker* applies only to class actions. *Compare Keith Mfg., Co. v. Butterfield*, 256 F. Supp. 3d 1123, 1130 (D. Or. 2017), *with Brown v. Cinemark USA, Inc.*, 876 F.3d 1199, 1201 (9th Cir. 2017).

But we do not need to delve into this uncertain caselaw—there is a crucial distinction between those decisions and this case. Those cases deal with whether the *party who filed the voluntary dismissal* may appeal from that voluntary dismissal. Here, the Trustee filed the notice of voluntary dismissal with prejudice, and he is not the party appealing. The Morabito Parties are the appellants. They seek review of an interlocutory order adverse to their interests that merged into the dismissal notice. And they have not engaged in sham or otherwise questionable tactics to manufacture an appeal. Accordingly, we conclude that we have § 158 jurisdiction to review this case.

**B.     The bankruptcy court correctly concluded that the Complaint pleads only estate claims; the Morabito Parties thus lack standing to pursue them.**

According to the Morabito Parties, this appeal involves the dismissal of claims belonging both to them and to the bankruptcy estates. The bankruptcy court correctly concluded to the contrary.

15

## 1. The complaint pleads only estate claims.

This portion of the appeal turns on whether the complaint pleads a non-estate claim for "fraud upon the court." The bankruptcy court concluded that it did not. We agree.[3]

**Nevada's cause of action for fraud upon the court.** We start with the cause of action that the Morabito Parties seek to assert: fraud upon the court. The Supreme Court of Nevada discussed it, at length, in *NC-DSH, Inc. v. Garner*. 125 Nev. 647 (2009). As it explained, Nevada Rule of Civil Procedure ("NRCP") 60(b) "has two separate provisions that address fraud." *Id.* at 650–51.[4] The first is NRCP 60(b)(3). *Id.* at 651. It allows the court to relieve a party from a final judgment for "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party[.]" Nev. R. Civ. P. 60(b).

The second provision addressing fraud is NRCP 60(b)'s "savings clause." *NC-DSH, Inc.*, 125 Nev. at 651. As the Nevada Supreme Court explained:

> The savings clause says, "This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a

---

[3] We discuss our concerns about the Morabito Parties' appellate standing later. We agree, however, that the Morabito Parties have standing to appeal from a decision that they lack standing.

[4] NRCP 60(b) "largely replicates Fed. R. Civ. P. 60(b), as written before the Federal Rules' 2007 revisions." *Id.* at 650.

judgment for fraud upon the court." While a motion under NRCP 60(b)(3) must be made "not more than 6 months after the proceeding was taken or the date that written notice of entry of the judgment or order was served," NRCP 60(b) does not specify a time limit for motions seeking relief for "fraud upon the court."

*Id.* at 651 (footnote omitted). It then provided an overview of the independent action for fraud upon the court:

"Fraud upon the court" has been recognized for centuries as a basis for setting aside a final judgment, sometimes even years after it was entered. *Hazel–Atlas Co. v. Hartford Co.*, 322 U.S. 238, 245, 64 S.Ct. 997, 88 L.Ed. 1250 (1944) (discussing "the historic power of equity to set aside fraudulently begotten judgments" and canvassing cases and treatises and vacating a judgment entered nine years earlier), *overruled on other grounds by Standard Oil Co. of Cal. v. United States*, 429 U.S. 17, 18, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976). It is, of course, true that "in most instances society is best served by putting an end to litigation after a case has been tried and judgment entered." *Id.* at 244, 64 S.Ct. 997. For this reason, a final judgment, once entered, normally is not subject to challenge. However, the policy of repose yields when "the court finds after a proper hearing that fraud has been practiced upon it, or the very temple of justice has been defiled." *Universal Oil Co. v. Root Rfg. Co.*, 328 U.S. 575, 580, 66 S.Ct. 1176, 90 L.Ed. 1447 (1946). "[A] case of fraud upon the court [calls] into question the very legitimacy of the judgment." *Calderon v. Thompson*, 523 U.S. 538, 557, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998). Put another way, "[w]hen a judgment is shown to have been procured" by fraud upon the court, "no worthwhile interest is served in protecting the judgment." Restatement (Second) of Judgments § 70 cmt. b (1982).

*Id.* at 653. And it adopted a definition of fraud upon the court that:

> embrace[s] only that species of fraud which does, or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases . . . and relief should be denied in the absence of such conduct.

*Id.* at 654 (quoting *Demjanjuk v. Petrovsky*, 10 F.3d 338, 352 (6th Cir. 1994)). Finally, a party may assert this "fraud upon the court" cause by either independent action *or* by motion (though the Nevada Supreme Court suggests a motion is the preferred and normal procedure). *Id.* at 653–54.

In short, Nevada recognizes a "fraud upon the court" independent cause of action; it may be brought by separate lawsuit or by motion; and it is different from a NRCP 60(b)(3) motion seeking reconsideration based on fraud.

**The bankruptcy court correctly concluded that the Morabito Parties did not allege an individual cause of action for fraud upon the court.** The bankruptcy court found that the Morabito Parties did not allege an individual fraud on the court claim and that the complaint only alleged estate claims. We are not persuaded that this was error.

First, we start by assuming that the Morabito Parties did plead a fraud on the court cause of action. Even then, the bankruptcy court properly determined that the complaint did not include the Morabito Parties' separate, individual claim.

To start, the Morabito Parties introduced the ambiguity they complain of when they captioned the complaint as they did. It does not specify whether the claims are brought in an individual capacity; instead, it reads: "PAUL A. MORABITO, an individual; CONSOLIDATED NEVADA CORPORATION, a Nevada Corporation[.]" They did this despite their knowledge—and concession—that they were asserting claims belonging to the bankruptcy estates. More to the point, they did not cleanly designate which claims were estate claims and which were their individual claims.

Compounding the error, the Morabito Parties concede that the bankruptcy estate *may bring* a fraud upon the court claim. So it is not as if some of the causes of action were *only* assertable by the estate while others were *only* assertable by the Morabito Parties individually. Instead, the complaint includes four causes of action that are estate property and assertable by the Trustee.

To further confound things, in the second cause of action, the Morabito Parties explicitly invoke § 108(a) to render that cause of action timely *for the Trustee*. By its terms, § 108(a) is only available to the chapter 7 trustee, and not to chapter 7 debtors like the Morabito Parties. 11 U.S.C. § 108(a) ("[T]he trustee may commence such action . . . ."); *cf. Wright v. Turner (In re Turner)*, 204 B.R. 988, 993 (9th Cir. BAP 1997) (discussing § 108(b)). So not only were the Morabito Parties asserting causes of action belonging to the estate, they were explicitly relying on a statute that was

19

only available to the Trustee.

Second, the bankruptcy court explained, several times, that it did not read the complaint as asserting a declaratory relief fraud upon the court cause of action. We agree.

We are not convinced that the Morabito Parties pled a Nevada fraud upon the court cause of action.[5] As the Supreme Court of Nevada has explained: "Resort to an independent action may be had only rarely, and then only under unusual and exceptional circumstances." *Bonnell v. Lawrence*, 128 Nev. 394, 399 (2012) (quoting 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2868, at 397–98 (2d ed. 1995)). As a result, "[t]o obtain relief by independent action after a judgment has become final and otherwise unreviewable, a claimant must meet the traditional requirements of such an equitable action, which are considerably more exacting than required for relief by motion under NRCP 60(b)(1)-(3)." *Id.* In addition, " 'under the Rule, an independent action [is] available only to prevent a grave miscarriage of justice. This is a 'demanding standard[.]' " *Id.* at 399–400 (quoting *United States v. Beggerly*, 524 U.S. 38, 47 (1998)).[6]

---

[5] When asked about the Nevada Rules of Civil Procedure, the Morabito Parties' counsel deflected: "I'm not a Nevada litigator, Your Honor." Hr'g Tr. at 30:16–17.

[6] Put differently, for independent actions, "[s]imple fraud is insufficient." *Turner v. Pleasant*, 663 F.3d 770, 777 (5th Cir. 2011), as revised (Dec. 16, 2011). "If [simple fraud]

(continued...)

20

The complaint alleges conduct and asserts that the conduct was fraudulent. And it alleges that the fraudulent conduct warrants relief under NRCP 60(b)(3). That same conduct, it alleges, also justifies relief as a fraud on the court. But as the Nevada Supreme Court stated, a fraud upon the court action (or motion) requires more than just allegations that justify NRCP 60(b)(3) relief. For that matter, the Morabito Parties do not allege or argue that the complaint's fraud upon the court cause of action satisfies the "traditional" and "more exacting" requirements of the cause, as required in Nevada. *Bonnell*, 128 Nev. at 399.

The Morabito Parties's appellate arguments are not persuasive. They reiterate their argument that they have independent standing to assert a fraud on the court claim. Neither we, nor the bankruptcy court, have assumed otherwise. The question, instead, is whether the complaint alleges Morabito's personal claim. It does not. Next, they argue that, even if a trustee has the exclusive right to assert monetary claims, a debtor can still have standing to seek non-monetary relief, such as declaratory or injunctive relief. Again, we do not necessarily agree or disagree with this statement of the law. As the bankruptcy court observed, the complaint's prayer for relief seeks monetary damages and declaratory relief

(...continued)

is the case, a motion under Rule 60(b)(3) is the proper vehicle to reopen judgment." *Id.* (citing *Beggerly*, 524 U.S. at 46). "Rather, the fraud alleged must be of a greater order of magnitude." *Id.*

indiscriminately, which confirms that estate causes of action are implicated. The Morabito Parties' general points, then, do not show that the bankruptcy court erred.

Procedurally, they argue that the complaint complied with NRCP 8(a) and Rule 7008 because it included a short and plain statement of the fraud and a demand for relief. It did not, they contend, have to include a cause of action captioned "declaratory relief" because they were not seeking relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. Finally, they assert that the bankruptcy court should have given them leave to amend the complaint. We disagree; having concluded that they did not have standing to assert estate claims, the bankruptcy court did not need to grant the Morabito Parties leave to amend the complaint.

In short, the bankruptcy court concluded that the complaint pled only estate causes of action and did not include the Morabito Parties' separate, independent cause of action or right based on alleged fraud upon the court. This was not error.

### 2. The Morabito Parties lack prudential standing to pursue estate claims.

Under § 541(a), filing a bankruptcy petition creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This includes legal claims and causes of action. *United States v. Whiting Pools, Inc.*, 462 U.S. 198,

22

205 n.9 (1983); *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 707 (9th Cir. 1986). For estate claims, the "bankruptcy code endows the bankruptcy trustee with the exclusive right to sue on behalf of the estate." *Estate of Spirtos v. One San Bernardino Cty. Superior Court Case Numbered SPR 02211*, 443 F.3d 1172, 1176 (9th Cir. 2006); *see* 11 U.S.C. § 323(a), 323(b).

Federal courts have jurisdiction over litigants only when the litigant has constitutional and prudential standing. *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 906 (9th Cir. BAP 2011). Thus, "[s]tanding is a threshold question in every federal case, determining the power of the court to entertain the suit." *Id.* (internal quotation marks omitted). In this case, we are not concerned with constitutional standing. Prudential standing, however, "embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Id.* (internal quotation marks omitted). One component of prudential standing "is the doctrine that a plaintiff must assert its own legal rights and may not assert the legal rights of others." *Id.* at 907.

Here, the complaint stated claims that belong to the bankruptcy estate. The Trustee is the proper, and exclusive, party in interest for those estate claims. And the Morabito Parties, although they disagree with the conclusion that *all* of the claims belong to the estate, admitted as much: they filed a motion seeking permission to prosecute the estate claims or to force the Trustee to abandon them. The bankruptcy court denied that

motion. And we, on appeal, affirmed.[7] So the Morabito Parties lack standing to pursue the estate claims contained in the complaint; and the Trustee, who had standing to prosecute them, could appropriately decide how to administer them. He dismissed them.

The Morabito Parties argue that procedure matters and that the Trustee should have been required to intervene under Civil Rule 17 before filing a notice of dismissal; they also argue that the Trustee was not, at the time he filed the notice of dismissal, a party to the proceeding. This does not compel reversal. We may raise standing concerns sua sponte. *In re Paine*, 250 B.R. at 104. Put differently, even if the bankruptcy court had not addressed standing, we could discuss it.

They also argue that the bankruptcy court erred when it refused to remand the proceeding. But to the extent the complaint alleges only estate claims, and it does, the Morabito Parties lack standing to seek remand. The bankruptcy court so concluded on the record, and we agree. Even though they filed the complaint, the causes belong exclusively to the Trustee. This resolves the majority of the Morabito Parties' arguments on appeal.

Finally, the Morabito Parties separately argue that the bankruptcy

---

[7] True, the Morabito Parties have appealed to the Ninth Circuit. But we are not obliged, absent a stay pending appeal, to wait for the Ninth Circuit to rule. To the extent they are concerned about any collateral effects of this decision, the Morabito Parties may appeal from our present decision. This also addresses their argument that they have appellate standing because, if they do not, their other appeal will become moot.

court erred by allowing the Trustee to dismiss the estate's claims without first offering them an opportunity to acquire the claims. But in this context their argument sounds as if they are disappointed prospective bidders. In the context "of a sale or other disposition of estate assets, creditors have standing to appeal, but disappointed prospective bidders who are not creditors usually do not have standing to appeal." *Simantob v. Claims Prosecutor, LLC (In re Lahijani)*, 325 B.R. 282, 290 n.13 (9th Cir. BAP 2005).

In short and in sum, the Morabito Parties did not have the right to bring the complaint—it asserted estate claims.[8] As a result, the bankruptcy

---

[8] Because the claims are estate property, we note two additional concerns. First, in the previous appeal, we affirmed the bankruptcy court's finding that it was reasonable for the Trustee to dismiss the Fraud Claims instead of prosecuting them. The Morabito Parties appealed to the Ninth Circuit. Any question about the Trustee's business judgment is not properly before us in this appeal.

Second, we doubt that the Morabito Parties have appellate standing to question the Trustee's disposition of estate claims. To have standing to appeal from a bankruptcy court order, an individual must show that she or he is a "person aggrieved." *Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 443 (9th Cir. 1983). "An appellant is aggrieved if 'directly and adversely affected pecuniarily by an order of the bankruptcy court'; in other words, the order must diminish the appellant's property, increase its burdens, or detrimentally affect its rights." *Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.)*, 177 F.3d 774, 777 (9th Cir. 1999) (quoting *Fondiller*, 707 F.2d at 442). Debtors, in particular, ordinarily cannot challenge an order unless there is likely to be a surplus estate. *Id.* at 778 n.2. And the "party invoking federal jurisdiction bears the burden of establishing standing." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014) (internal quotation marks omitted).

Here, there is no evidence supporting the suggestion that there will be any excess funds; the estates are hopelessly insolvent. As a result, the Morabito Parties lack

(continued...)

court properly denied the motion to remand and correctly authorized the Trustee, the representative of the estate, to dismiss the complaint.

## C. Any error is harmless.

We conclude with some remarks on the ostensible futility of this appeal. The Morabito Parties want two things: first, they want to prosecute the estate's claims; second, they want to prosecute their own claims. The first we addressed in our earlier decision, and the Morabito Parties are appealing to the Ninth Circuit.

And as for their individual claims, the bankruptcy court made crystal clear on the record and in the order that it was not deciding whether the Morabito Parties had individual claims, much less adjudicating those claims on the merits. Indeed, it expressed a firm belief that those claims should be litigated in the Nevada state court. So the Morabito Parties' individual rights remain undisturbed by the bankruptcy court's decision.

But supposing that the bankruptcy court is wrong and the complaint asserted the Morabito Parties' individual claims, even then, the bankruptcy court did not reach the merits of the individual claims, so the Morabito Parties would be free to assert them by motion or independent equitable action. *See NC-DSH, Inc.*, 125 Nev. at 653 ("[d]enial of relief [by motion] in th[e rendering] court will bar an independent equitable action in another

---

[8](...continued)
appellate standing to dispute the Trustee's administration of the estate's claims.

court, unless the denial was on a ground that precluded reaching the merits of the motion, or the circumstances have changed" (alterations in original) (quoting Wright, Miller & Kane, Federal Practice and Procedure § 2868)). Last, to the extent the complaint contained the individual claims, the Trustee would lack standing to dismiss them with prejudice.

In short, the Morabito Parties' individual claims for fraud upon the court, if any, were not prejudiced by the bankruptcy court's decision.

## CONCLUSION

Based on the foregoing, we AFFIRM the bankruptcy court's order denying the motion to remand.